80 U.S. 517 (____)
13 Wall. 517
RAILROAD COMPANY
v.
SOUTTER ET AL.
Supreme Court of United States.

*521 Messrs. G.B. Smith and M.H. Carpenter, for the appellant.
Mr. J.W. Cary, contra.
*523 Mr. Justice BRADLEY, having stated the case, delivered the opinion of the court.
The bare statement of the claim, even presenting it in the language of the bill itself, seems to us sufficient to condemn it. Who are the complainants? Are they not the very bondholders, self-incorporated into a body politic, who, through their trustee and agent, effected the sale which was declared fraudulent and void, as against creditors, and made the purchase which has been set aside for that cause? Was it ever known that a fraudulent purchaser of property, when deprived of its possession, could recover for his repairs or improvements, or for incumbrances lifted by him whilst in possession? If such a case can be found in the books, we have not been referred to it. Whatever a man does to benefit an estate, under such circumstances, he does in his own wrong. He cannot get relief by coming into a court of equity. By the civil law, the possessor, even in bad faith, may have the value of his improvements, if the real owner choose to take them. The latter has an option to take them or to require their removal. But this rule has never obtained in the common law, nor in the system of English equity. One of the maxims of the latter system is, "He that hath *524 committed iniquity shall not have equity." And various illustrations of it are furnished by the books.[*]
But the complainants are wrong in asserting that the property was not theirs. It was theirs. Their purchase was declared void only as against the creditors of the La Crosse and Milwaukee Railroad Company. In other words, it was only voidable, not absolutely void. By satisfying these creditors they could have kept the property, and their title would have been good, as against all the world. The property was theirs; but, by reason of the fraudulent sale, was subject to the incumbrance of the debts of the La Crosse company. This was the legal effect of the decree declaring their title void. Therefore, they were, in fact, paying off an incumbrance on their own property when they paid into court the money which they are now seeking to recover back.
They are wrong also in asserting that they made the payment under a mistake of fact. If it was made under any mistake at all, it was clearly a mistake of law. They mistook the legal effect of transactions of which they were chargeable with notice. They were the persons for whose benefit the purchase was made, which was declared to be fraudulent. They were the principal defendants in the creditors' bill, upon which this decree was rendered. All the evidence in that suit had been taken when they made the payment in question. The cause was pending, on appeal, in this court. There was not a fact, therefore, of which they were ignorant. They had full and actual notice of all the transactions, and all the evidence on which the decree was ultimately founded.
All this appears from the statements of the bill in this case. We do not see how such a bill can possibly be sustained. The pleader who drew it evidently felt the force of these objections, and interjected some special circumstances for the purpose of showing that the case is distinguishable from the class of cases referred to. It is stated that Russell Sage, one of the defendants, who received a large portion *525 of the money paid into court, was also a large holder of bonds under the Barnes mortgages, and advised and encouraged the sale by Barnes, and participated in the organization of the complainants' company. All these facts may be true, and on the demurrer to the bill must be taken as true; but they do not show, nor is it alleged, that Sage was personally a participant in the fraud which was committed in the sale under the Barnes mortgage. And if it were so alleged, can one fraud-doer obtain relief in equity against his particeps criminis?
Again, it is alleged that the board of directors of the complainant was totally changed, and was, at the time of such payment, wholly composed of persons who had not participated personally in the foreclosure of the Barnes mortgage; and that a large majority of the stockholders and directors at the time of the said payment were persons who had no interest at the time of the foreclosure, and no participation in the proceedings. This cannot alter the case. A corporation aggregate retains its identity through all the changes that may take place in its individual membership. This corporation, by its own statement, was adjudged to be the child of a fraudulent and corrupt transaction, and entered upon its career as purchaser of the property, with all the risks of its illicit origin and fraudulent purchase upon its head. Change of membership cannot change its rights. If it can, when is the change effected? How many, or what proportion, of the members must be changed?
It is needless to pursue the subject further. If the present individual stockholders of the complainants have been wronged that wrong cannot be redressed in this proceeding without violating the clearest principles of equity jurisprudence. The bondholders who received the money that was paid into court were entitled to that money. It was due them. Had not the complainants interposed they could have sold the property and realized their claim from the proceeds. How can they be called to account? The present owners of the road have purchased it (it is to be presumed) under the proceedings had in favor of the judgment creditors. *526 How can their title be disturbed by the complainants? What equity would there be in subjecting the property in their hands to an incumbrance from which it was free when their purchase was made?
The decree must be
AFFIRMED.
Mr. Justice FIELD, dissenting.
I differ from Brother Bradley in the construction of the bill in this case, and, therefore, differ from him in the conclusions to be drawn from the facts which it discloses. To my mind it presents a clear case, where money, amounting to over four hundred and sixty thousand dollars, was paid under a mistake of fact, into which the complainant was led by the decision of this court. And it would be, in my judgment, only administering simple justice to the company to compel the defendants to make restitution, or to give to the company the benefit of the decree in the foreclosure suit, upon which the money was paid. I, therefore, dissent from the judgment rendered.
The CHIEF JUSTICE and Mr. Justice MILLER also dissented.
NOTES
[*] See Francis's Maxims, Maxim VII.