T. M. CUNNINGHAM *v.* W. G. M. CAMPBELL and others.

April Term, 1878.

FRAUDULENT CONVEYANCE FOR A CONSIDERATION — RIGHTS OF A CREDITOR OF THE GRANTOR. — A conveyance of land, void as to creditors, having been made in consideration of the note of a third person, which the frauȷulent grantor handed back to the fraudulent grantee, to be delivered as a gift to their sister, a creditor of the grantor filed a bill, based on the fraud, and seeking to reach both the land and the note as the property of the grantor. *Held,* that the creditor might elect to take the land or the note, not both; that if he took the land, the note should be surrendered to the grantee; and if he took the note, the sale would be validated so far as he was concerned, and as to all persons to the extent of the consideration thus paid.

*Osment,* for complainant.
*Goodlett,* for defendants.

THE CHANCELLOR : — On March 1, 1877, the defendant W. G. M. Campbell and one W. H. McNeil bought from J. E. Massengale and W. S. Currin, partners under the style of Massengale & Co., a stock of goods for the consideration of $6,500, for which they executed thirteen notes of that date for $500 each, payable at intervals of a month, for the succeeding thirteen months. About the 10th or 12th of March, 1877, Massengale & Co. assigned the last four of these notes to the complainant, and deposited a fifth note as collateral security for a debt on which complainant was liable for them as surety, and which debt he has been compelled to pay. On March 25, 1877, Massengale & Co. filed their petition in bankruptcy in the District Court of the United States at Nashville. They were adjudged bankrupts, and an assignee appointed. On April 21, 1877, the assignee filed his bill in equity in said United States court against the defendant W. G. M. Campbell and his partner McNeil, and against the present complainant, Cunningham, and the holders of the other notes of Campbell & McNeil by assignment of Massengale & Co., seeking to reach both the stock of goods and the notes as having been fraudulently assigned,

and as the property of Massengale & Co. On May 30, 1877, W. G. M. Campbell conveyed to his brother and co-defendant, M. Campbell, his interest in several pieces of realty, the consideration recited in the deed being $4,000 cash. On June 13, 1877, this bill was filed to set aside the conveyance just mentioned, as made to hinder and delay the creditors of W. G. M. Campbell, and to subject the lands conveyed to the satisfaction of the notes of Campbell & McNeil assigned to complainant as aforesaid.

The testimony shows that the consideration of $4,000 recited in the deed from W. G. M. Campbell to M. Campbell was not paid in cash. The grantor and grantee both state that no money passed at the time, the consideration consisting of about $1,000, the supposed indebtedness of W. G. M. Campbell to M. Campbell for money loaned at various times, or otherwise due, and liabilities of the latter as surety of the former; about $1,000 of supposed judgments against W. G. M. Campbell in favor of third persons, not particularly ascertained or specified, which it was understood M. Campbell would assume and pay; and about $2,000 which W. G. M. Campbell says was to be paid in notes on third persons, and M. Campbell says was to be paid in his own note, which was, however, never executed. On June 7, 1877, one William Dix sold land to one Nolan, for which the latter gave his two notes, at one and two years, for $1,750 each, and which two notes afterwards came to the hands of the defendant M. Campbell. One of these notes M. Campbell delivered, without indorsement, to W. G. M. Campbell, for the balance of the purchase-money of the lands conveyed in the deed of May 30, and W. G. M. Campbell immediately handed the note back to him, to be delivered as a gift to their sister, Sallie B. Campbell. These facts being brought out in the examination of W. G. M. Campbell, the complainant, on February 5, 1878, filed an amended and supplemental bill against the two Campbells, their sister Sallie B. Campbell, and Nolan, to attach the note as the

property of W. G. M. Campbell, and subject it to the satisfaction of his demands. The entire case is now before me for final hearing.

The insolvency of W. G. M. Campbell at the date of his conveyance to his brother, M. Campbell, and of the gift of the note to the sister, Sallie B. Campbell, being clearly established, and the circumstances demonstrating that the effect of the conveyance was to hinder and delay the creditors of W. G. M. Campbell, whatever may have been the actual intent of the brothers, the only question is as to the extent of the complainant's relief. He is, of course, entitled to subject the lands to the satisfaction of his debt, treating them as still the property of his debtor, W. G. M. Campbell, and the sale to M. Campbell as void. He might also affirm the sale, and subject the Nolan note to the satisfaction of his debt as the property of his debtor, the gift to the sister being fraudulent in law as against him. But the counsel of the complainant has taken the position that his client is entitled to reach both the land and the note, and the question is whether he can claim this measure of relief.

The argument of the learned counsel is, that although he reaches the lands upon the ground that the sale is void as to him, yet it is valid between the parties ; and the note, which was delivered as part of the consideration, is the property of W. G. M. Campbell, and as such may also be subjected, the defendant M. Campbell having no right to it, and no power to recover it by action. He concedes that if M. Campbell had given his own note for the lands, he might avoid payment while in the hands of the fraudulent vendor, or his donee, because of the failure of consideration. But he insists that a note of a third person is like a personal chattel actually delivered, incapable of being recovered by the fraudulent vendee, and, as the property of the vendor, liable to be seized by his creditors. He cites and relies on the decision of the Supreme Court of the United States in *Railroad Company* v. *Soutter*, 13 Wall. 517.

Where there has been fraud in fact in a conveyance of property, for which it has been successfully impeached by a creditor, it seems clear on principle that the grantee cannot maintain a suit, either at law or in equity, to obtain relief for any of the consequences of the fraudulent transaction. This is the substance of the ruling in *Railroad Company* v. *Soutter*. There has been a tendency in the cases to go further, and to hold that, even in the suit impeaching the transaction, the grantee shall not be allowed for the consideration paid, the removal of encumbrances, or the improvement of the property which has enhanced its value. *Bean* v. *Smith*, 2 Mason, 252, 298 ; *Pettus* v. *Smith*, 4 Rich. Eq. 197 : *Strike* v. *McDonald*, 2 Har. & G. 191 : *Strike's Case*, 1 Bland, 57, 80 ; *Williamson* v. *Goodwyn*, 9 Gratt. 503. But the better doctrine seems to be that equity will, in such cases, allow for payments which have been used in paying the debts of the grantor, and for improvements to the extent they have permanently enhanced the value of the property. *How* v. *Camp*, Walk. (Mich.) 427 ; *King* v. *Wilcox*, 11 Paige, 589. And there can be no doubt that, although in a clear case of fraud in fact the property will not be allowed to stand as security to the grantee for advances actually made, or responsibilities assumed in consequence of the conveyance (*Brooks* v. *Caughran*, 3 Head, 464), yet it is otherwise if the circumstances be doubtful, or the transaction only fraudulent in law. *Boyd* v. *Dunlap*, 1 Johns. Ch. 478 ; *Alley* v. *Connell*, 3 Head, 565 ; *Doughten* v. *Gray*, 3 Stockt. 323, 330.

As long ago as 1687, the distinction was drawn, by the Lord Chancellor Jeffries, between the action of a court of law and the court of equity in determining the rights of the parties in setting aside fraudulent conveyances. " So, at law," it was said, " where a conveyance is found to be fraudulent, the creditor comes in and avoids all without repayment of any consideration-money ; and in equity, therefore, where the court can decree back the principal and

interest, there is no hurt done ; and a lesser matter, in such a case, will serve to set a conveyance aside." *Herne* v. *Meeres*, 1 Vern. 466 ; *s. c.*, 2 Bro. C. C. 176, in note. This language is cited with approval by Chancellor Kent in *Boyd* v. *Dunlap*, 1 Johns. Ch. 482, and by Mr. Justice Story in *Bean* v. *Smith*, 2 Mason, 296. It is also cited by the Court of Appeals of South Carolina in *McMeekin* v. *Edmonds*, 1 Hill Eq. 294, and acted upon by that court in *Brown* v. *McDonald*, 1 Hill Eq. 297 ; *Parker* v. *Holmes*, 2 Hill Eq. 95. "In general," says the same court, "when a convey- ance is set aside for fraud, it is within the discretion of the court to decree the conveyance to stand as a security for the money actually paid. This is commonly done where there is no imputation of moral fraud, or the proof of actual fraud is in any degree doubtful." *Anderson* v. *Fuller*, 1 McMull. Eq. 32. And the true doctrine of equity in such cases has been fully and accurately expounded by Mr. Jus- tice Swayne in *Clements* v. *Moore*, 6 Wall. 312. "A sale," says this eminent judge, "may be void for bad faith, though the buyer pays the full value of the property bought. This is the consequence where his purpose is to aid the seller in perpetrating a fraud upon his creditors, and where he buys recklessly, with guilty knowledge. When the fact of fraud is established in a suit at law, the buyer loses the property without reference to the amount or appli- cation of what he has paid, and he can have no relief either at law or in equity. When the proceeding is in chancery, the jurisdiction exercised is more flexible and tolerant. The equity appealed to, while it scans the transaction with the severest scrutiny, looks at all the facts, and, giving to each one its due weight, deals with the subject before it accord- ing to its own ideas of right and justice. In some instances, it visits the buyer with the same consequences which would have followed in an action at law. In others, it allows a security to stand for the amount advanced upon it. In others, it compels the buyer to account only for the differ-

ence between the under-price which he paid and the value of the property. In others, although he may have paid the full value, and the property may have passed beyond the reach of the process of the court, it regards him as a trustee, and charges him accordingly. Where he has honestly applied the property to the liabilities of the seller, it may hold him excused from further responsibility. The cardinal principle in all such cases is, that the property of the debtor shall not be diverted from the payment of his debts, to the injury of his creditors, by means of the fraud.''

In the case now before us, the property of the debtor, the lands conveyed, is secured to the payment of the grantor's debt to the complainant. The latter is not content, but asks for more. It may be conceded that if the Nolan note had passed beyond the control of the grantor, either by transfer to a *bonâ fide* assignee for value or by seizure, of another creditor, the grantee would be without redress. The note is, however, in his possession, as bailee, it is true, but the bailee of a voluntary donee of the grantor, who can stand only in the shoes of the grantor. A creditor of the grantor has a clear equity to reach the property conveyed, by treating the sale as void by reason of the fraud. He has an equal equity to reach the note by treating the sale as valid. To allow him to reach both the property and the note would be to sustain him in assuming antagonistic positions, and to give him more than he could have claimed if no conveyance had been made. Even if the note had been seized in the actual custody of the voluntary donee, it would be clearly inequitable to give the creditor the benefit of both property and note, where all the parties are before the court, and it can `` deal with the subject according to its own ideas of right and justice.'' *Bradford* v. *Beyer*, 17 Ohio St. 388. Even at law it has been held that a creditor cannot seize the goods and also garnish the grantee. *Clapp* v. *Rogers*, 38 N. H. 435. *A fortiori*, I take it, equity will decline to lend a helping hand to such an effort. It will

require the creditor who is seeking equity to do equity, and if he has impounded both funds, to surrender one of them, even if there has been positive fraud. And, of course, in a case where actual fraud is not clearly proved, and the fraud only inferred "from the circumstances, and relation, and character of the parties." *Per* Harper, J., in *Parker* v. *Holmes*, 2 Hill Eq. 96.

The complainant may, therefore, elect to take the property or the note, not both. If he take the property, the note will be surrendered to the grantee; and if he take the note, the sale will be validated to the extent of the consideration thus paid, and *in toto* so far as the complainant is concerned. For that would be the effect of taking the note with full knowledge of the facts. *Butler* v. *O'Brien*, 5 Ala. 316; *Furness* v. *Ewing*, 2 Penn. 479. The defendants will pay the costs.