# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### GERMAN SAVINGS & LOAN SOC. v. TULL et al.

(Circuit Court of Appeals, Ninth Circuit.   March 6, 1905.)

#### No. 1,096.

1. FEDERAL COURTS—JURISDICTION—SUIT FOR PARTITION.

A suit for partition is a local action within the provisions of Act March 3, 1875, c. 137, § 8, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513], and one in which any question between any of the parties, plaintiffs or defendants, affecting their rights or interests in the land may be put in issue and determined; and a federal court is not without jurisdiction because questions may arise between plaintiffs who are citizens of the same state, nor will it make a realignment of parties to defeat its jurisdiction because such questions may arise, where the bill, although properly setting out the interest of each party in the premises, does not disclose any controversy which renders it necessary.

2. ABATEMENT—ANOTHER ACTION PENDING—FEDERAL AND STATE COURTS.

The pendency of a suit in a state court cannot be pleaded in bar of a suit between the same parties on the same cause of action in a federal court.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Abatement and Revival, §§ 87–92.

Pendency of action in state or federal court as ground for abatement of action in the other, see note to Bunker Hill & Sullivan M. & C. Co. v. Shoshone M. Co., 47 C. C. A. 205.]

3. RES JUDICATA—VALIDITY OF JUDGMENT—AFFIRMANCE IN · DIRECT PROCEEDINGS.

Where a question as to the validity of a judgment of the Supreme Court of a state was raised in such court by a petition for rehearing, and decided adversely to the petitioner, who thereupon removed the case to the Supreme Court of the United States by writ of error, where the same question was raised, and the judgment of the state court was affirmed, such question is res judicata, and cannot be again raised collaterally between the parties.

4. SAME—MATTERS CONCLUDED BY JUDGMENT.

The heirs of a deceased wife brought suit in a state court to recover a half interest in certain real estate as community property in which their mother's interest descended to them. At the time of her death plaintiffs were minors, and their interests in the property were thereafter sold and conveyed by their guardian to their father under an order

136 F.—1

of the probate court. The father then mortgaged the entire property to the defendant in the suit for money borrowed to improve the same, and such defendant subsequently bought it in on a foreclosure of the mortgage. By the final judgment of the court, entered pursuant to a mandate of the Supreme Court of the state, the guardian's deed, the mortgages to the defendant, and the conveyance based thereon were held void and set aside as to the half interest in the property held by the wife, and plaintiffs were adjudged the owners of an unincumbered, undivided half interest in the property, together with the tenements, hereditaments, and appurtenances thereto belonging, free and clear of all incumbrances, and free from any right or title of the defendant thereto. The defendant moved the Supreme Court to modify its decree so as to leave open for adjudication by the court below all questions as to the rents, taxes, and repairs, and the value of permanent improvements placed on the premises with money borrowed from it as mortgagee, which motion was denied. *Held*, that the judgment was an adjudication of the defendants' rights with respect to the improvements, rents, etc., and that such rights could not be again contested in a subsequent suit for partition brought by the heirs.

5. TENANCY IN COMMON—RECOVERY FROM CO-TENANTS FOR IMPROVEMENTS—BONA FIDE PURCHASER.

A tenant in common, who became such through a purchase by which he supposedly acquired the entire title, can only recover from his co-tenants for improvements made upon the property where he occupies the position of a bona fide purchaser; and he does not have such standing as against his co-tenants where at the time of his purchase he had full knowledge with respect to conveyances which purported to divest them of their interest, but which were in law fraudulent and void, merely because through mistake of law he relied on their sufficiency.

6. SAME.

A mortgagee, who acquired title to the property through foreclosure, and who had full knowledge, when he took the mortgage, of probate proceedings by which it had been sought to vest the interest of certain minor heirs in the property in the mortgagor, which proceedings were fraudulent in law, and were afterward set aside, is not entitled, as a tenant in common with such heirs, to recover from them for improvements placed on the property by the mortgagor either as a bona fide purchaser or through subrogation to the rights of the mortgagor, who, being a purchaser mala fides, could not recover for such improvements.

Morrow, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern Division of the District of Washington.

Happy & Hindman, Hughes, McMicken, Dovell & Ramsey, and W. S. Goodfellow, for appellant.

Nash & Nash and James Dawson, for appellees.

Frederick W. Dewart, for cross-appellants.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The main facts of this case are stated in the opinion of our Brother MORROW, and it is therefore unnecessary to state them here. We agree with him in regard to the jurisdiction of the court and the conclusiveness of the judgment in the state court of Washington in the case between these parties in respect to all matters there determined. We are unable to agree that the equities now sought to be set up by the appellant were not among those matters. According to the express declaration of the Supreme Court of the state of Washington (Dormitzer v. Ger-

man Savings & Loan Soc., 23 Wash. 207, 62 Pac. 886) the decisive question in that case was "whether the respondent [appellant here] took its mortgages upon the property in controversy in good faith, without knowing, or having the means of information by which it might, by the exercise of common prudence, have known, of the acts of the guardian and F. M. Tull in transferring the property from the minor children to F. M. Tull, and whether those acts were fraudulent.". The Supreme Court of Washington, as did the United States Circuit Court from which the present appeals come, acquitted the appellant German Savings & Loan Society of any intention to commit or participate in any fraud upon the minor children of Tull, for the reason that the appellant based its action in the proceedings upon the advice of its attorney and agent at Portland, Or., to the effect that such proceedings were not illegal, but, on the contrary, valid; the Supreme Court of Washington saying, in its opinion (23 Wash. 220, 62 Pac. 890):

"The proof is uncontradicted, and it is admitted by the respondent in its brief, that the probate proceedings were for the purpose of vesting title to the entire piece of property in the father, so that he might mortgage it to the respondent in order to get money to go on with the buildings in course of construction on part of the property, and that, in place of the children's interest being sold for cash, they were to get a mortgage, second and subordinate to the respondent's, for a sum the father was to go through the form of bidding, which had been agreed upon in advance by the probate court, on testimony taken as to the fair value of the children's interest. The testimony of P. D. Tull, the appointed guardian, shows that he was used as an instrument by the father to accomplish this end. He was in no sense of the word 'guardian.' He did just as he was directed to do by the father, and, it seems, with full knowledge of the probate court. The father was the actual guardian. The law as it existed at the time these alleged sales by the guardian were made authorized the probate court, when the estate was suffering waste, or a better investment of the value could be made, to sell the infant's interest in real estate. Here no bona fide sale in the open market to the highest bidder was contemplated. If we should uphold these transactions, the interest of infants in real property in this state would be under a very precarious tenure. It may be conceded that there was no intention—and we think that is a fact—on the part of the attorneys, the probate judge, Tull, and the respondent to injure the appellants, and that they acted from the best of motives; but the fact stands out, nevertheless, that they perpetrated in law a fraud upon the children."

The opinion of the Supreme Court of the state concluded with these words:

"The judgment and decree of the lower court is reversed, with costs to appellants. This cause is remanded to the court below, with instructions to enter a judgment and decree herein adjudging and decreeing that Dora May Dormitzer, William L. Tull, and Ernest B. Tull, the appellants herein, are entitled to an unincumbered undivided one-half of the real estate described in' the pleadings in this action, and that the guardian deeds described in said pleadings and orders of the probate court of Spokane county, directing the sale of said half interest, or in any way affecting the same, and the said guardian deeds conveying the same to F. M. Tull by P. D. Tull, as guardian of said appellants, as set out in the pleadings, be declared fraudulent, null, and void; and also decreeing that the plaintiffs in the action below recover their costs."

We agree with the court below that the decision of the Supreme Court of Washington "fixes definitely and finally the rights of the

Tull children as owners of an undivided one-half of the property unincumbered against any title or claim or lien which the German Savings & Loan Society can ever assert arising out of any transaction previous to the date of the mandate." That counsel for the respondent in that case (appellant here) understood that decision to go to that extent, is, as said by the court below, clear; for, in addition to their petition for a rehearing of that cause, they moved the Supreme Court of the state, on the 25th day of January, 1901, to modify its order and decree so as to leave open for investigation and adjudication in the superior court of the state all questions relating to rents, issues, and profits of the premises, and all questions as to the value of permanent improvements placed upon the premises in question with moneys borrowed from the society, and all moneys advanced and paid by it for the necessary and proper repairs and maintenance of the property, for taxes, and for assessments for local improvements. If it be true that the remittitur from the supreme to the superior court of the state had then gone down, it was still within the power of the Supreme Court to recall the remittitur for the purpose of modifying or changing its judgment according to its decision in the case of Bell v. Waudby, 7 Wash. 204, 34 Pac. 917. We find it impossible to conclude that the Supreme Court of the state would have denied those motions, and adhered to its decision directing a decree adjudging the children "entitled to an unincumbered undivided one-half" of the property, and adjudging the deeds and orders in question "in any way affecting the same" fraudulent, null, and void, if it had considered the society entitled to the equities there, as well as here, set up. Indeed, it is impossible to see how that court could have held the society entitled to such equities, in view of its express adjudication to the effect that it was not a purchaser in good faith, but, on the contrary, that, while not intending to do so, it in fact participated in a legal fraud upon the children in acquiring its asserted rights. That judgment is, as held in the opinion of our Brother MORROW, res adjudicata, and conclusive upon that question, as well as every other issue in the case. We must therefore accept it as an established fact that the present appellant does not occupy the position of a bona fide purchaser. Even if that were not so, the evidence in the present suit shows the same thing; for while the appellant relied and acted upon the advice of its attorney and agent, and was therefore innocent of any intended wrong, it knew of the rights of the children, for they were matters of public record, of which it had not only constructive, but actual, notice. And as it, through its agents, knew of, and, indeed, was a party to, the proceedings through which F. M. Tull sought to divest the interests of the children and invest the same in himself, and as those proceedings constituted a fraud in law, as was adjudged by the Supreme Court of Washington and the Supreme Court of the United States, it is impossible to see how the appellant can, in any aspect of the case, be regarded in the light of an innocent purchaser for value of the children's interest. A mistake in regard to the legal effect of transactions, of which a party has notice, never makes of him a bona fide purchaser. In

other words, as said in Bodkin v. Arnold, 48 W. Va. 108, 35 S. E. 980 "plaintiff's belief, to be bona fide, must be founded on ignorance of fact, and not ignorance of law." To the same effect is Milwaukee & Minnesota Ry. Co. v. Soutter, 13 Wall. 517, 20 L. Ed. 543. In Williamson v. Jones, 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891, it was expressly held that "one having notice of facts rendering his title inferior to another, who, by mistake of law, regards his title as good, cannot claim for permanent improvements."

The equities here set up by the appellant are not always accorded a purchaser in good faith, and are never awarded a tenant in common who becomes such mala fide. In Cosgriff v. Foss, 152 N. Y. 104, 46 N. E. 307, 36 L. R. A. 753, 57 Am. St. Rep. 500, the Court of Appeals of New York refused to allow a tenant in common to recover for improvements; saying:

"They were not in the line of restoration, but of a business venture. We know of no well-considered case in this state that would authorize an allowance for improvements under the circumstances. * * * Equity requires contribution from tenants in common only to prevent injustice; and, unless the rule is kept well in hand, it is liable to cause more injustice than it prevents."

Authorities to the effect that a tenant in common who does not hold in good faith cannot recover for improvements put upon the property are too numerous to require citation. In Gillespie v. Moon, 2 Johns. Ch. 585, 7 Am. Dec. 559, Chancellor Kent said:

"Such an allowance would be confounding all moral distinctions, and be giving countenance and sanction to the most flagrant injustice."

And in the case of Milwaukee & Minnesota Ry. Co. v. Soutter, supra, the Supreme Court of the United States, in speaking of a fraudulent purchaser of property, and asking if it was ever known that such a purchaser, deprived of its possession, could recover for his repairs or improvements or for incumbrances lifted by him whilst in possession, answered the question thus:

"If such a case can be found in the books, we have not been referred to it. Whatever a man does to benefit an estate under such circumstances he does in his own wrong. He cannot get relief by coming into a court of equity."

Moreover, the improvements put upon the property in question, one-half the cost of which the appellant seeks to charge against the Tull children, were put upon it not by the appellant, but by its mortgagor, F. M. Tull. The appellant was not then a tenant in common. Certainly F. M. Tull was a mala fide purchaser of the children's interest, for which reason, under the eminently just and thoroughly established doctrine above adverted to, he could not recover from them in a court of equity for any repairs or improvements, or for any incumbrances lifted by him whilst in possession. It is just as certain that the appellant could not acquire from F. M. Tull, either by conveyance or by subrogation, any other or greater rights than he himself possessed. Swarts v. Siegel, 54 C. C. A. 399, 117 Fed. 13. The only rights, so far as appears, that the appellant acquired through conveyance from F. M. Tull, were those de-

rived from the mortgages executed by him to the appellant, and the foreclosure thereof, the full scope of which, as has been seen, was conclusively determined by the judgment of the Supreme Court of the state in the case between these parties, already referred to.

As regards the claimed right of subrogation, it is sufficient to say that, even if the facts of the case admitted of the subrogation of the appellant to the rights of F. M. Tull, the rights here asserted to charge against the interests of his children one-half of the cost of the improvements, etc., never existed in him, for the reasons already stated, and therefore the appellant could get nothing by reason of such subrogation. Subrogation is a doctrine of equity jurisdiction, which does not depend on privity or contract, express or implied, except in so far as the known equity may be supposed to be imported into the transaction, and thus raise a contract by implication. It is founded on the facts and circumstances of each particular case and on the principles of natural justice. In general, it will be applied "wherever any person, other than a mere volunteer, pays a debt or demand which in equity or good conscience should have been satisfied by another, or where a liability of one person is discharged out of a fund belonging to another, or where one person is compelled for his own protection, or that of some interest which he represents, to pay a debt for which another is primarily liable, or wherever the denial of the right would be contrary to equity and good conscience. Subrogation being the creature of equity, it will not be permitted where it would work injustice to the rights of those having equal or superior equities. Thus it will not be enforced against a bona fide purchaser for value without notice, or in favor of a person guilty of fraud, or for the benefit of one who would thereby be enabled to derive an advantage from, or to establish his claim through, his own wrong or negligence or inequitable or illegal conduct. Nor will it be enforced at the expense of a legal right, or where resort to a usurious agreement or security would be necessary for its establishment." 27 Am. & Eng. Enc. of Law (2d Ed.) 203, 204, and authorities there cited. See, also, Ætna Ins. Co. v. Town of Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537; Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; First National Bank of Seattle v. City Trust Safe Deposit & Security Co. of Philadelphia, 52 C. C. A. 313, 114 Fed. 529. Moreover, it is admitted by the pleadings in this cause that the property in question is worth $250,000, and it does not appear but that the appellant's one-half interest in the property itself and its one-half interest in the rents, issues, and profits thereof is enough to reimburse itself for its loans, with interest. To apply the doctrine of subrogation so as to enable a party to a wrong to make a profit at the expense of the injured and innocent parties to that wrong would be quite foreign to the principles upon which the doctrine of subrogation is founded.

In the light of the foregoing authorities it would seem clear enough that the appellant cannot be awarded the rights now and here asserted by it by means of subrogation to the rights of F. M. Tull, first, for the reason that F. M. Tull never possessed any such

rights; and, second, because upon the facts of the case as disclosed by the record the appellant is not entitled to the application of the doctrine of subrogation.

We are of opinion that, except in one respect, the judgment of the court below is right. It refused to allow "any interest on the account." We think that the one-half of the various amounts of money received by the appellant from the property belonging to the complainants and cross-complainant should bear legal interest from the date they were respectively received by the appellant, and that the appellant is entitled to like interest upon the various sums of money paid out by it on account of the property that were allowed by the court below from the date of their respective payments.

The judgment of the court below will be so modified, and, as thus modified, will stand affirmed.

MORROW, Circuit Judge (dissenting). This is a suit in equity for the partition of real estate and improvements thereon, and for an accounting for the proceeds of the property according to the rights and interests of the respective parties, and, in case partition thereof cannot be made without prejudice and loss to the owners thereof, then and in that event the said premises, or such part thereof as cannot be divided, to be sold by and under the direction of the court, and the proceeds of the sale divided between the parties. The real estate and improvements concerned in this case are situated in the city of Spokane, state of Washington. The complainants in the court below (appellees here) are William L. Tull, a citizen of the state of Washington, and Lucius B. and Lucius G. Nash, a firm of attorneys doing business under the name of Nash & Nash in the city of Spokane, Wash. The defendant German Savings & Loan Society is a corporation existing under the laws of California, the defendant Dora May Seeley is a citizen of Illinois, and the defendant Ernest B. Tull, a minor, a citizen of Iowa. The trial of the case resulted in a decree of partition dividing a portion of the property in question among the complainant William L. Tull and the defendants Dora May Seeley, Ernest B. Tull, and the German Savings & Loan Society, and for a sale of the remainder and the distribution of the proceeds between the parties in interest. From this decree an appeal is taken to this court by the German Savings & Loan Society, and a cross-appeal is prosecuted by Ernest B. Tull and Dora May Seeley.

The facts leading up to this litigation are, briefly, the following: F. M. Tull, the father of William L. Tull, Dora May Seeley, and Ernest B. Tull, parties herein, bought the lots which are the subject of suit in 1886, and commenced the construction of a building thereon. In order to complete the purchase price of the ground and to construct a suitable building thereon, he negotiated a mortgage on the property with the appellant herein in the amount of $40,000, but before it was executed his wife died. The property was considered to be community property, and the wife's interest therein passed to the three children. As they were minors at the time of her death, a valid mortgage could not be given, under the laws of Washing-

ton. A guardian was appointed by the probate court for the minors, and upon his petition a sale was ordered of their interests in the property. The father became the purchaser at this sale, but paid no money for their interests, merely giving a mortgage for the amount bid to the guardian, which mortgage was afterwards canceled without further payment. The record title was thus completed in F. M. Tull, the father, who then secured the loan of $40,000 from the appellant, and proceeded with the construction of buildings on the lots. In 1889 the buildings were destroyed by fire, and with the insurance collected F. M. Tull paid off the mortgages, leaving the ground free from incumbrance. He afterwards gave other mortgages to the appellant as security for loans made by it at different times, amounting to $120,000, all of which was expended in the improvements now on the property. In 1894 F. M. Tull defaulted in the payment of interest, the mortgages were foreclosed, and at foreclosure sale the appellant became the purchaser and obtained possession of the property. In 1897 the Tull children brought suit in the state court of Washington against the appellant herein and others, seeking a decree declaring the act of their guardian in canceling the mortgage given by their father null and void, and to have said mortgage reinstated as a lien upon the property superior to any other interest or right, and for a foreclosure of said mortgage and sale of the property. The superior court decided against the complainants, and they appealed to the Supreme Court of the state, submitting the cause upon the transcript of the record and briefs. After submission of the case one of the justices of the Supreme Court resigned. Hon. William H. White was appointed in his place, and delivered the opinion of the court in the case on November 7, 1900, reversing the decision of the superior court, holding the proceedings in the probate court to be fraudulent, and restoring to the complainants the share of their mother in the property, namely, an undivided one-half interest, unincumbered. Dormitzer v. German Savings & Loan Society, 23 Wash. 132, 224, 62 Pac. 862. This judgment was affirmed by the Supreme Court of the United States in January, 1904. German Savings & Loan Society v. Dormitzer, 192 U. S. 125, 24 Sup. Ct. 221, 48 L. Ed. 373. Meanwhile the Tull children commenced an action in the superior court of Washington to have the property partitioned, and for an accounting from the appellant herein of the rents, issues, and profits of the property. This cause was removed to the United States Circuit Court for the District of Washington, where judgment was rendered in favor of the complainants. An appeal was taken therefrom to this court, resulting in a reversal of the judgment of the Circuit Court for want of jurisdiction, and the cause was ordered remanded to the state court. German Savings & Loan Society v. Dormitzer, 116 Fed. 471, 53 C. C. A. 639. While that cause was still pending and undetermined, the present suit was commenced in the Circuit Court on the 16th day of June, 1902, for partition of the property, and an accounting of rents and profits by the appellant herein; the complainants being but one of the Tull heirs, joined with Nash & Nash, attorneys, claiming a lien upon the property by virtue of express

contracts with the Tull heirs. The appellant answered, and also filed a cross-bill, setting out a want of jurisdiction in the Supreme Court of Washington to render the judgment in favor of the Tull heirs, and pleading a misjoinder of parties and causes of action. It alleged that it acquired the various mortgages upon the property in question in perfect good faith, and for valuable consideration; that there was no community interest in the property at the time F. M. Tull invested in it, and the Tull children were therefore not entitled to any rights therein upon the death of their mother; that appellant is the rightful owner of the legal title to the property in controversy; but that, in the event it should be adjudged that the Tull heirs own an interest in said property, as tenants in common with the appellant, it is prayed that appellant be decreed to have a lien upon such interest for money expended by it in the payment of taxes, assessments, mortgages, repairs, etc., and for a fair valuation of the improvements upon the property. Issues were joined between all the parties after answers and cross-bills having been filed by the other defendants, and the Circuit Court rendered judgment against appellant for partition and an accounting, withholding decision as to the other controversies presented.

It is assigned as error that the court erred in not dismissing the proceedings in this cause, for the reason that the court had no jurisdiction to proceed in the matter. This objection is based upon the joinder of Nash & Nash, citizens of the state of Washington, with William L. Tull, also a citizen of the state of Washington, as complainants. It is alleged in the bill of complaint that Nash & Nash were copartners in the practice of the law at Spokane, Wash.; that William L. Tull and the defendant Dora May Seeley, in their own behalf and in behalf of the defendant Ernest B. Tull, consulted and by agreement employed Nash & Nash to institute the necessary legal proceedings to determine their respective rights in and to said real estate, and to recover the same. It is further alleged that pursuant to such agreement Nash & Nash did institute the necessary legal proceedings in the superior court of Washington, and that such proceedings were thereafter had that a judgment and decree was entered adjudging and decreeing that Dora May Dormitzer (Seeley) and William L. Tull and Ernest B. Tull were entitled to an unincumbered, undivided one-half of the real estate described in the pleadings in this action. It is further alleged that the said Tull heirs, and each of them, were poor, and utterly without means or money to prosecute a suit to obtain relief from certain fraudulent acts referred to in the bill, and were compelled to secure the necessary legal assistance upon a contingent fee, which terms and agreement of employment between Dora May Seeley and William L. Tull and the firm of Nash & Nash were as follows, to wit:

"That said Dora May Seeley agreed to give as compensation to said Nash & Nash thirty-five per cent. of whatever the said Dora May Seeley recovered or established a right to in said real estate and the rents, issues, and profits thereof, and William L. Tull agreed to give as compensation one-half of whatever said William L. Tull recovered or established his right to in said real estate, and the rents, issues, and profits thereof; all compensation to be contingent upon the success of the litigation, which terms and conditions were accepted by said Nash & Nash."

It is further alleged that by virtue of the terms of this employment Nash & Nash are entitled to an undivided $7/120$ of the interest of Dora May Seeley in and to said real estate and all rents and profits of said real estate from April 23, 1896, and that by the terms of the agreement between Nash & Nash and William L. Tull Nash & Nash are entitled to one-half of the interest of said William L. Tull and all rents, issues, and profits of said real estate from the said 23d day of April, 1896. It is further alleged that the defendant Dora May Seeley is the owner in fee and entitled to the possession of one undivided one-sixth of the real estate described in the bill of complaint and an undivided one-sixth of all rents, issues, and profits arising out of such real estate since the 23d day of April, 1896, less 35 per cent. thereof belonging to Nash & Nash; that William L. Tull is the owner in fee simple and entitled to the possession of one undivided one-sixth of the said real estate, and an undivided one-sixth of all rents, issues, and profits arising out of said real estate since the 23d day of April, 1896, less one-half thereof belonging to Nash & Nash; Nash & Nash are entitled to an undivided $17/120$ of the said real estate and an undivided $17/120$ of all the rents, issues, and profits thereof since the 23d day of April, 1896; that the defendant Ernest B. Tull is the owner in fee simple and entitled to the possession of an undivided one-sixth of the said real estate and an undivided one-sixth of all rents, issues, and profits arising out of the said real estate since the 23d day of April, 1896; that the defendant German Savings & Loan Society is the owner in fee simple of an undivided one-half of said real estate and an undivided one-half of all rents, issues, and profits arising out of said real estate. In the prayer for relief the court is asked to ascertain and adjudge the respective rights and interests of the parties to the action in and to the real estate described in the complaint, and the rents, issues, and profits thereof. Nash & Nash also ask that they be allowed the sum of $15,000 as attorneys' fees for their services in the present suit.

Upon these allegations the appellant contends that the Circuit Court was without jurisdiction of the cause, for the reason that there was a lack of diversity of citizenship as required by the statute; that Nash & Nash are complainants against the Tull heirs as defendants, and that each of the separate contracts alleged to have been made by them with the Tull heirs, respectively, constitutes a separate and independent cause of action as against each of said heirs, and that each of these alleged causes of action set up by the Nashes must be separately tried out, ascertained and adjudged; that Nash & Nash cannot maintain their cause of action alleged in the bill of complaint against William L. Tull in the Circuit Court, for the reason that they are citizens of the state of Washington, and as between them there is no diversity of citizenship which is required to give the court jurisdiction of all the parties to the suit. A sufficient answer to this objection is the fact that the bill of complaint does not allege any controversy between Nash & Nash and William L. Tull. The bill alleges that Nash & Nash have an interest in the real estate in controversy, and in the rents, issues, and profits thereof, and sets forth the source of their title; but no separate controversy is alleged to exist between them and their co-com-

plainant William L. Tull, from whom part of their interest has been derived, and no decree is asked as against him. Pacific R. R. v. Ketchum, 101 U. S. 289, 298, 299, 25 L. Ed. 932. This is a suit to partition real property, and under the law of the state of Washington the interest of all persons in the property must be set forth in the complaint specifically and particularly, as far as known to the complainant. Ballinger's Ann. Codes & St. Wash. § 5558. That is what has been done in this bill of complaint. It is a local action, brought to enforce a claim and settle the title to real estate, and comes within the provisions of section 8 of the act of March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513], as declared by the Supreme Court in Greeley v. Lowe, 155 U. S. 58, 67, 74, 15 Sup. Ct. 24, 39 L. Ed. 69.

It is further contended that in arranging the parties in accordance with their interests as against the appellant the complainants would be Nash & Nash and William L. Tull, citizens of the state of Washington, Ernest B. Tull, a citizen of the state of Iowa, and Dora May Seeley, a citizen of the state of Illinois, against the appellant, a citizen of the state of California, as defendant. By this arrangement Nash & Nash and William L. Tull, who are citizens of the state of Washington, where the suit is brought, would be joined as complainants with Ernest B. Tull, a citizen of the state of Iowa, and Dora May Seeley, a citizen of the state of Illinois, and a lack of jurisdiction would arise under section 1 of the act of March 3, 1887, c. 373, 24 Stat. 552, as amended by the act of August 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 514], as construed by the Supreme Court in Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635, where it was held that the Circuit Court did not have jurisdiction on the ground of diverse citizenship if there were two plaintiffs to the action who were citizens of and residents in different states, and the defendant was a citizen of and resident in a third state, and the action was brought in the state in which one of the plaintiffs resided. But it was held in Greeley v. Lowe, supra, that the case of Smith v. Lyon involved only the rights of parties to personal actions residing in different districts, and had no bearing upon a case involving a local action brought to enforce a claim and settle the title to real estate. But, aside from this distinction between a local action and a personal action, there is nothing in the allegations of the bill that would justify the court in arranging the parties as proposed by the appellant. Any question affecting the right of the plaintiff to a partition, or the rights of each and all of the parties in the land, may be put in issue, tried, and determined in such action. De Uprey v. De Uprey, 27 Cal. 329, 335, 87 Am. Dec. 81. And where the bill in such a case shows on its face diverse citizenship as between the parties complainant and defendant; that the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000; and the suit is brought in the district of the residence of either the plaintiff or defendant—the court has jurisdiction of the case, and no rearrangement of the parties will be made with respect to a subordinate question to defeat that jurisdiction. For the reasons stated, the bill is not open to the further

objection that it is multifarious. Brown v. Guarantee Trust Co., 128 U. S. 403, 410, 9 Sup. Ct. 127, 32 L. Ed. 468.

To the bill of complaint the appellant in the court below interposed a plea in abatement, setting up the pendency of an action in the state court, commenced by the plaintiff in this action and the defendant Dora May Seeley against the appellant and the defendant Ernest B. Tull in the superior court of the state of Washington, for a partition of the property mentioned and described in the complaint herein; that upon the petition of the appellant the action was removed to the Circuit Court for the District of Washington, and thereafter a decree was rendered in said court adverse to the appellant; that thereupon the case was appealed to this court, and upon a hearing the case was remanded to the Circuit Court, with directions to remand said cause to the superior court of the state of Washington (German Savings & Loan Society v. Dormitzer, 116 Fed. 471, 53 C. C. A. 639); that said remanding order has never been made by the Circuit Court in accordance with the order of this court. It appears from the opinion of this court in that case that the petition for the removal of the cause from the state court to the United States Circuit Court was insufficient, for the reason that the case presented no separable controversy, nor did such diverse citizenship exist as would confer jurisdiction upon the Circuit Court. It is contended by the appellant that the plea setting up the pendency of the action in the state court should have been sustained as a bar to the maintenance of the present action, and that the bill should have been dismissed. The pendency of a suit in a state court between the same parties cannot be pleaded in abatement of a suit for the same cause in a federal court. Stanton v. Embrey, 93 U. S. 554, 23 L. Ed. 983; Insurance Co. v. Brune's Assignee, 96 U. S. 588, 592, 24 L. Ed. 737; Gordon v. Gilfoil, 99 U. S. 168, 178, 25 L. Ed. 383; Bunker Hill & Sullivan M. & C. Co. v. Shoshone M. Co., 47 C. C. A. 200, 109 Fed. 504.

The next question to be considered is the validity of the judgment of the state court upon which the present proceeding for partition is based. The judgment and all the facts connected therewith are fully set forth in the case of Dormitzer v. German Savings & Loan Society, 23 Wash. 132, 62 Pac. 862, and in the same case on writ of error to the Supreme Court of the United States, 192 U. S. 125, 24 Sup. Ct. 221, 48 L. Ed. 373. But it appears further that the appeal from the judgment of the superior court to the state Supreme Court was taken in the May term, 1900; that the appeal was docketed on the 7th of May, and set down for argument on May 16th; that the appeal was not orally argued, but submitted on briefs of counsel; that at the last-named date the Supreme Court consisted of Judges Dunbar, Reavis, Anders, Fullerton, and Chief Justice Gordon; that afterwards, on May 20th, Chief Justice Gordon resigned; that his resignation was accepted June 1st, and that on June 5th William White was appointed judge to fill the vacancy caused by the resignation, and took the oath of office, and entered upon his duties; that thereafter the case was taken under consideration by the court, and on November 7, 1900, the

opinion in the case written by Judge White was filed, in which two of the four judges concurred, and from which two dissented. The opinion recites that:

"The judgment and decree of the lower court are reversed, with costs to appellants. The cause is remanded to the court below, with instructions to enter a judgment and decree herein adjudging and decreeing that Dora May Dormitzer, William L. Tull, and Ernest B. Tull, the appellants herein, are entitled to an unincumbered undivided one-half of the real estate described in the pleadings in this action, and that the guardian deeds described in said pleadings and orders of the probate court of Sopkane county directing the sale of said one-half interest, or in any way affecting the same, and the said guardian deeds conveying the same to F. M. Tull by P. D. Tull, as guardian of said appellants, as set out in the pleadings, be declared fraudulent, null, and void; and also decreeing that the plaintiffs in the action below recover their costs."

Thereafter the respondents filed a petition for rehearing in the Supreme Court of the state in which the facts just stated were called to the attention of the court in support of the contention that Judge White was not present and sitting as a member of the court when the case was submitted for decision, and, with respect to the four judges who were present and sitting as members, they were equally divided in opinion, and, as a consequence, the judgment of the court below should have been affirmed. On January 7, 1901, the petition for a rehearing was denied, and the cause remanded to the superior court for further proceedings in accordance with the opinion. Thereafter, and on January 25, 1901, the respondent moved the Supreme Court to modify its order and decree so as to leave open for investigation and adjudication in the superior court all questions relating to rents, issues, and profits of the premises, and all questions as to the value of permanent improvements placed upon said premises with moneys borrowed from respondent as mortgagee, and all moneys advanced and paid by respondent for the proper and necessary repairs and maintenance of said premises, and for all moneys paid by respondent for taxes and local assessments upon said premises for street and sidewalk and other local improvements made and charged upon said premises. This motion was denied March 19, 1901. While this motion was pending in the Supreme Court, the superior court, on March 2, 1901, entered its judgment and decree pursuant to the decision and decree of the Supreme Court. Thereafter appellant presented its petition to the Supreme Court of the United States for a writ of error, citation, and other process directed to the Supreme Court of the state of Washington, to the end that the judgment of the latter court in this cause might be corrected. This petition was allowed. A writ of error was issued, and the records and proceedings in the cause were certified to the Supreme Court of the United States for inspection and correction of the judgment upon errors assigned. Among others, it was assigned as error that the decision of the Supreme Court of the state of Washington lacked the concurrence of a majority of the said court, as constituted at the time of the hearing of said cause, and its submission to the said Supreme Court for its determination; wherefore it was alleged the said decision was null and

void, and in violation of article 5 of the amendments to the Constitution of the United States, which provides that no person shall be deprived of life, property, or liberty without due process of law. It was also assigned as error that the decision of the Supreme Court of Washington was entirely aside from and outside of the issues raised by the pleadings and record in the cause, and was therefore null and void, because it in effect took the property of the appellant without due process of law, in violation of article 5 of the amendments to the Constitution of the United States. The case was heard in the Supreme Court of the United States on a motion to dismiss and on the merits. The motion to dismiss was based upon the ground that the federal question involving the constitutional rights of the appellant was not set up in the court below. This motion was overruled, the case was considered on the merits, and the decree of the Supreme Court of Washington was affirmed. The effect of this affirmance was that none of the claims of error were well founded. Mutual Life Ins. Co. v. Hill, 193 U. S. 551, 24·Sup. Ct. 538, 48 L. Ed. 788.

Notwithstanding these proceedings, appellant contends that the judgment of the Supreme Court of the state of Washington is not conclusive, and cites the case of Reynolds v. Stockton, 140 U. S. 255, 11 Sup. Ct. 773, 35 L. Ed. 464, as establishing a doctrine authorizing this court to disregard that judgment. We do not so understand that case. It was there contended that the Court of Chancery of the state of New Jersey had refused to give effect to section 1 of article 4 of the Constitution of the United States, providing that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." The judgment to which full faith and credit had not been given in that case was a judgment of the Supreme Court of the state of New York. The Supreme Court of the United States, referring to the constitutional provision, and applying it to the judgment in question, said:

"It does not demand that a judgment rendered in a court of one state, without the jurisdiction of the person, shall be recognized by the courts of another state as valid, or that a judgment rendered by a court which has jurisdiction of the person, but which is in no way responsive to the issues tendered by the pleadings, and is rendered in actual absence of the defendant, must be recognized as valid in the courts of any other state."

It appears that the defendant in the New York suit appeared in the action, and filed an answer to the complaint, but took no further part in the proceedings, and was not present at the trial. Referring further to this feature of the case, the court said:

"Nor are we concerned with the question as to the rule which obtains in a case in which, while the matter determined was not in fact put in 'issue by the pleadings, it is apparent from the record that the defeated party was present at the trial, and actually litigated that matter. In such a case, the proposition so often affirmed that that is to be considered as done which ought to have been done, may have weight, and the amendment which ought to have been made to conform the pleadings to the evidence may be treated as having been made. Here there was no appearance after the filing of the answer, and no participation in the trial or other proceedings. Whatever

may be the rule where substantial amendments to the complaint are permitted and made and the defendant responds thereto, or where it appears that he takes actual part in the litigation of the matters determined, the rule is universal that where he appears and responds only to the complaint as filed, and no amendment is made thereto, the judgment is conclusive only so far as it determines matters which by the pleadings are put in issue."

In the present case the appellant took actual part in the entire proceedings in the Supreme Court of the state, and upon a writ of error litigated the questions in controversy in the Supreme Court of the United States. In our opinion, those questions are now res adjudicata, and beyond the reach of collateral attack. The judgment of the Supreme Court of the state and the judgment of the superior court of Spokane county entered in pursuance of that judgment must be treated as valid, and binding upon the parties.

The remaining question involved in this appeal relates to the scope of this judgment with respect to certain improvements placed on the property by F. M. Tull. To determine this question a clear understanding must be had of the relation of the appellant to the property at the time the judgment was entered, on March 2, 1901. Passing over the earlier dealings between F. M. Tull and the appellant, we come to the transactions and proceedings which, as a purchaser, placed appellant in the possession of the property, and which possession it held at the time of the judgment. On May 5, 1892, F. M. Tull executed a mortgage on this property to the appellant to secure a promissory note for the sum of $100,000. This amount represented two prior notes secured by mortgages on the same property, amounting to $75,000, and a further loan at that time of $25,000. A second mortgage was executed by F. M. Tull on the same property in favor of the appellant on July 10, 1893, to secure a further loan of $20,000. Tull defaulted in the payment of the interest on these two mortgages in 1894. At that time the improvements now in controversy had been placed upon the lots by Tull with the money borrowed from the appellant. The appellant proceeded to foreclose these mortgages, and at the foreclosure sale on April 23, 1896, became the purchaser of the real estate and improvements, and obtained possession of the property. It was this possession and the rights obtained by the appellant as a purchaser at the foreclosure sale that it had at the time of the judgment. In the judgment and decree entered in the superior court of Spokane county on March 2, 1901, pursuant to the judgment of the Supreme Court of the state, these mortgages executed by Tull to the appellant were declared fraudulent, and of no effect, and were canceled and set aside so far as they, or either of them, in any way affected or created any right to or lien upon the undivided one-half right, title, or interest of William L. Tull, Dora May Dormitzer, and Ernest B. Tull in and to said premises. It was further adjudged that the appellant obtained no title to said undivided one-half of said premises as against the plaintiffs in that suit and Ernest B. Tull by reason of the foreclosure of said mortgages and the purchase of the premises at foreclosure sale. It was further adjudged and decreed that William L. Tull, Dora May Dormitzer, and Ernest B. Tull, as heirs at law of Lucy A. Tull, were the owners of and entitled to (share and share alike) an undivided one-

half of the lands and premises in controversy, together with the tenements, hereditaments, and appurtenances thereto belonging, free and clear of all incumbrances, and free from any right, title, or decree of the appellant in, upon, or to said undivided one-half. The principal question before the court was the lien of these two mortgages upon the undivided one-half interest of the Tull heirs in the property in controversy, and the title to that interest acquired by the appellant at the foreclosure sale. And it was to remove these incumbrances from that interest that the judgment and decree was directed. There were other questions relating to prior transactions concerning the property that were necessarily considered and determined in reaching the final question at issue. But, aside from appellant's petition for a rehearing in the Supreme Court, and its motion to modify the order and decree of that court, we do not find that anywhere or at any time the equitable rights now insisted upon by the appellant with respect to the improvements placed upon this property were submitted to the state court for consideration, or that they were considered or determined by that court. It is true that in the petition for a rehearing appellant represented to the court, among other things, the inequity of decreeing to the Tull heirs the ownership of one-half of the premises without requiring them to submit to an equitable accounting for the money advanced by the appellant for the erection of the buildings upon the premises, and it was represented that an accounting for the money thus advanced might be allowed, either upon such a partition of the premises as would give to the appellant the reimbursement of its proper proportion of the cost going into the half interest of the heirs in such buildings, or, if the property could not be partitioned, that it be sold, and out of the proceeds of the sale such fair and equitable division be made between the parties as the court of equity might determine. Appellant's motion to modify the order and decree was for the purpose of leaving these asserted equitable rights open for further adjudication. But that was not a suit in partition, and the denial of the petition for a rehearing in that case upon that ground did not determine that the appellant could not set up its equities in a partition suit. There was nothing in the pleadings or in the judgment that called for a determination of that question, and the most that can be said of the effect of the denial of the petition for a rehearing was that the court was of the opinion that the equities claimed by appellant were not within the issues of that case.

The conclusions which the writer of this opinion draws from the foregoing proceedings in the state court do not meet with the approval of his associates. What follows is therefore the opinion of only one member of the court.

The present action is a suit in partition, and all the rights of the parties have been put in issue for trial and determination. Ballinger's Ann. Codes & St. Wash. § 5563. The buildings on the lots were erected by F. M. Tull with money borrowed from the appellant. The allegations of the bill that Tull and the appellant acted in bad faith in these transactions are not supported by the evidence. We agree with the judge of the Circuit Court that the parties acted in good faith. He says:

"In the pleadings and arguments on the side of the complainants the case has been heavily weighted with denunciation of the German Savings & Loan Society as a fraudulent conspirator with an unnatural father to wrongfully appropriate the inheritance of minor children, all of which I consider as unnecessary and untrue. * * * Tull, however, regarding the property as the product of his own business enterprise, he had to face the probable loss of all, or the best part of it, by the foreclosure of mortgages and liens to which it was then subject, unless he could make it produce an income by completing the building. * * * Under the advice and guidance of his lawyer, Mr. Tull undertook to rescue the estate from threatened ruin by first removing the legal impediments, and then mortgaging the property and using the money thus obtained to clear off existing incumbrances and complete the building."

The Supreme Court of the state, in its decision, was of the same opinion. Speaking of the previous guardian's sale of this property by order of the probate court, the illegality of which was the basis of that decision, the court said:

"It may be conceded that there was no intention—and we think it is a fact—on the part of the attorneys, the probate judge, Tull, and the respondent, to injure the appellants, and that they acted from the best of motives." Dormitzer v. German Savings & Loan Society, 23 Wash. 220, 62 Pac. 862.

The appellant having acted in good faith in loaning its money to F. M. Tull to save the property and make improvements, and having also acted in good faith in purchasing the property at the foreclosure sale, we think it is entitled to have its equities considered and determined in these partition proceedings; or, to state the proposition in another way, the appellant is entitled to ask the court of equity in these proceedings to require the complainants to do equity as a condition incident to the decree of partition. In the case of Leake v. Hayes, 13 Wash. 213, 43 Pac. 48, 52 Am. St. Rep. 34, the Supreme Court of Washington reached the same conclusion in a partition suit with respect to similar equities claimed by a co-tenant for improvements placed upon the premises. The court said:

"We also think that the court should not have awarded a partition of the premises without first having ascertained the value of the appellants' improvements thereon. While it is a well-settled general rule of law that one tenant in common cannot, at his own suit, recover for improvements placed upon the common estate without the request or consent of his co-tenant, yet a court of equity will not, if it can avoid so inequitable a result, enable a co-tenant to take advantage of the improvements for which he has contributed nothing. When the common lands come to be divided, an opportunity is offered to give the co-tenant who has enhanced the value of a parcel of the premises, the fruits of his expenditures and industry by allotting to him the parcel so enhanced in value, or so much thereof as represents his share of the whole tract. It is the duty of equity to cause these improvements to be assigned to their respective owners (whose labor and money have thus been inseparably fixed on the land), so far as can be done consistently with an equitable partition. Freeman on Cotenancy and Partition (2d Ed.) § 509. This principle is but an exemplification of the ancient and well known maxim that 'he who asks equity must do equity.' Now, if this be true, as appellants allege, that at the time of the death of Charles Washburn the land was almost wholly in a wild state, and therefore unproductive, and that they have not only put valuable and permanent improvements upon it, but have cleared it for cultivation, and made it capable of yielding valuable profits. and have done all this in good faith under the belief that Mrs. Hansen was the absolute owner, it seems to us that it would not only be extremely unjust

and inequitable to allow them nothing for their expenditures and labor, but contrary to reason and the great weight of the authorities."

And, after quoting from Pomeroy's ·Equity at section 1240, and citing other authorities, the court proceeds, as follows:

"The respondent can lose nothing by the application of this just principle. The improvements have cost her nothing, and, if the appellants are allowed their present value in case partition cannot be made without prejudice to the interests of the several owners, or are awarded the particular portion of the premises which are thereby enhanced in value, she will receive all she would have received if appellants had permitted the land to remain un-improved, and that is all she can justly claim."

In Hall v. Piddock, 21 N. J. Eq. 313, the doctrine of equitable partition is stated as follows:

"The rule that a tenant in common, who has made improvements on the land held in common, is entitled to an equitable partition, is well established, and is hardly disputed by counsel. The only good faith required in such improvements is that they should be made honestly for the purpose of improving the property, and not for embarrassing his co-tenants, or incumbering their estate, or hindering partition. And the fact that the tenant making such improvements knows that an undivided share in the land is held by another, is no bar to equitable partition."

In the case of Bright v. Boyd, 1 Story, 478, Fed. Cas. No. 1,875, Mr. Justice Story, referring to the right of a bona fide purchaser to be allowed compensation for improvements, says: .

"It appears to me, speaking with all deference to other opinions, that the denial of all compensation to such a bona fide purchaser, in such a case, where he has manifestly added to the permanent value of an estate by his meliorations and improvements, without the slightest suspicion of any infirmity in his own title, is contrary to the first principles of equity. Take the case of a vacant lot in a city, where a bona fide purchaser builds a house thereon, enhancing the value of the estate to ten times the original value of the land, under a title apparently .perfect and complete. Is it reasonable or just that in such a case the true owner should recover and possess the whole, without any compensation whatever to the bona fide purchaser? To me it seems manifestly unjust and inequitable thus to appropriate to one man the property and money of another who is in no default. The argument, I am aware, is that the moment the house is built it belongs to the owner of the land by mere operation of law; and that he may certainly possess and enjoy his own. But this is merely stating the technical rule of law by which the true owner seeks to hold what in a just sense he never had the slightest title to; that is, the house. It is not answering the objection, but merely and dryly stating that the law so holds. But then, admitting this to be so, does it not furnish a strong ground why equity should interpose, and grant relief? * * *"

The case was referred to a master to take account of the enhanced value of the premises in controversy by reason of the meliorations and improvements placed thereon by the plaintiff. Upon hearing the report of the master the court held the improvements to be a lien or charge upon the estate for the increased value, and made the following statement in connection therewith:

"I wish, in coming to this conclusion, to be distinctly understood as affirming and maintaining the broad doctrine, as a doctrine of equity, that, so far as an innocent purchaser for a valuable consideration, without notice of any infirmity in his title, has, by his improvements and meliorations, added to the permanent value of the estate, he is entitled to a full remuneration, and that such increase of value is a lien and charge on the estate, which the

absolute owner is bound to discharge before he is to be restored to his original rights in the land. This is the clear result of the Roman law, and it has the most persuasive equity, and, I may add, common sense and common justice, for its foundation." Bright v. Boyd, Fed. Cas. No. 1,876.

I am of the opinion that the appellant's equities are in line with these cases, and entitle it, upon a partition of the property, to such an equitable division as will allow it the benefit of the improvements placed upon the one-half interest owned by the Tull heirs. But, if such a division cannot be had, then the property should be sold, and out of the proceeds of the sale the appellant should be allowed one-half thereof, and, in addition, such further sum as the value of one-half of the improvements bears to the value of the entire property. There should also be an accounting of rents, issues, and profits for the period the property has been in the possession of the appellant, to wit, from April 23, 1896, and such proportion thereof awarded to the appellees as is provided herein for the distribution of the proceeds resulting from the sale of the property.