PHILLIPS & *a. v.* JOHNSON.

BARRETT *v.* SAME.

64　393
67　175
68　328

A personal mortgage, made to secure a liability assumed by the mortgagee for the mortgagor, is invalid against the creditors of the latter if the liability is not truly and specifically stated in the condition, or if its validity, truth, and justice are not verified by the affidavit.

TRESPASS *de bonis.*　Writs dated March 2, 1885.　January 24, 1885, the defendant, a deputy sheriff, attached the goods as the property of Dennis Phillips upon several writs sued out against him by his creditors.　The plaintiffs claim under two mortgages of the same goods, made and executed by said Dennis, January 22, 1885,—one to Phillips & Clark, and the other to Barrett.　The mortgage to Phillips & Clark was given to indemnify them against their liability on a promissory note for $1,000, dated October 27, 1884, payable ten months after date to the order of the Littleton Savings Bank, signed by Dennis and indorsed by the plaintiffs, George W. Phillips and C. H. Clark.　The note was made, signed, and indorsed on the day of its date, and said Dennis procured the money on it of the bank, where it now remains unpaid.

The condition of the mortgage is,—"Provided nevertheless that if I my executors administrators or assigns shall pay or cause to be paid unto the Littleton Savings Bank their executors or administrators the sum of $1,000, as shown by my note dated on or about the 27th of Oct. 1884 payable to said bank or order in ten months from date and indorsed by said George W Phillips and Charles H Clark then these presents shall be void."　The oath is,—

"We severally swear that the foregoing mortgage is made for the purpose of securing the liability specified in the condition thereof and for no other purpose whatever and that said liability was not created for the purpose of enabling the mortgagor to execute said mortgage, but is a just debt honestly due and owing from the mortgagor to the said Littleton Savings Bank.

> Dennis Phillips
> George W. Phillips
> Charles H. Clark"

The consideration of the mortgage is stated as follows: "Know all men by these presents that I Dennis Phillips . . . in consideration of one thousand dollars liability incurred for me by George W Phillips and Charles H Clark . . . the liability whereof I do hereby acknowledge have granted" etc.

The mortgage to Barrett, and the liability intended to be secured by it, were in all material respects similar.

Upon facts not necessary to be reported, the defendant claims that the mortgages were not recorded nor left for record at the time of the attachment; and the plaintiffs claim that the defendant had such notice of the mortgages as rendered a record unnecessary.

*Drew & Jordan*, for the plaintiffs. The cases are important. Large sums are involved.

Upon an inspection of the statute and of the condition of the mortgages, the court will find the terms of the statute to have been substantially complied with, and the entire object of the statutory provision fully met. There was no false description, but such a truthful, accurate describing of the liability as could mislead nobody, defraud nobody. The indorsing of the notes made the plaintiffs liable to pay them. The oath was in each case varied so as to express that liability. Enough appears in the condition, the oath, and the instrument to verify the validity, truth, and justice of such liability. It is not necessary that all the particulars and details be set out, but only sufficient stated to determine the matter with reasonable certainty. If, upon consideration of the whole document, the intention of the parties is apparent, any error of detail will be disregarded. *Bell*, J., in *Webb* v. *Stone*, 24 N. H. 286, says,—"Substantial correctness, such as may prevent mistake or uncertainty as to the debt intended, is all that has ever been required." Such has been the uniform holding of our court. It has often been held in our state that misdescriptions of notes secured by mortgage, as to amount, date, time, and place of payment, names of payer and payee, &c., are not fatal so long as sufficient appears to identify or make certain the note, debt, or liability. The affidavit is merely for the information and protection of creditors. *Sumner* v. *Dalton*, 58 N. H. 295, 296. Have these creditors been misinformed, or misled by its form? When their attachments were made they had not looked at it. The condition and oath will inform any one examining them what the character of the liability is. The court have been liberal as to construction and interpretation of these matters, making certain that which the parties intended should be. *Benton* v. *Sumner*, 57 N. H. 117. In *Parker* v. *Morrison*, 46 N. H. 280, and other cases cited to this point by the defendant, the oath was not varied, but like the oath in *Sumner* v. *Dalton, supra*, followed the regular or printed form, using the word debt. In our mortgages the word debt wherever it occurred was erased, and the

word liability written over it, most clearly revealing the intention of the parties, their understanding of the agreement, and varying the form of the oath so as to make certain the validity of the liability.

It will not be seriously contended that the meaning and intent of the parties must be derived alone from the form of the affidavit. The different parts of the instrument must be taken and interpreted together. Any part which throws light upon any other part must be considered with it. The whole mortgage must be construed together. The two mortgages were made, received, and filed together. It will be seen that the first mortgage—the one to Phillips & Clark—starts out with this language: "In consideration of one thousand dollars liability incurred for me by George W. Phillips and Charles Clark the liability whereof," etc. In the condition of the mortgage is a full description of the note as to amount, by whom signed, when, where, and to whom payable, "and indorsed by said George W. Phillips and Charles H. Clark."

The affidavit states that the mortgage was "made for the purpose of securing the liability," etc. (the word debt having been erased); "that said liability was not created," etc. An inspection of the original mortgage in our hands shows that "liability" was also written over the word debt where it last occurred in the affidavit, and partly obliterated. Whether the same appears in the mortgage to Barrett we are unable to state, as the mortgage has not come to us since the trial. The intention of the parties clearly was to express the liability against which the mortgage was given. Beginning with the mortgage and reading it through, can any intelligent man be misled as to what and to whom the liability was? It was a one thousand dollar liability incurred for the mortgagor by the mortgagees. Then in the condition, although the note is made payable to the Littleton Savings Bank, it is set out as being indorsed by the mortgagees. And lastly, the affidavit is varied by erasing the word debt, wherever it occurs, and interlining the word liability. The mortgage was not to the bank, but to the plaintiffs,—and for what? To indemnify and save them harmless for doing just what the mortgage says they did,—to wit, incurring a thousand dollar liability by reason of indorsing Dennis Phillips's note to the bank for that sum. The mortgage to Barrett is like the one to Phillips & Clark, except as to the amount, and that after describing the property mortgaged this paragraph is inserted: "Said property being subject to a mortgage to Charles H. Clark and George W. Phillips of even date with this to secure them from liability by signing a $1,000 note or indorsing the same for me." If anything were needed beyond what appears in the consideration, the condition, and the affidavit, we seem to have it in the above bit of information openly inserted in the body of the mortgage.

*W. S. Ladd*, on the same side. Let it be well observed, that no

particular form of words is required by the statute, either in describing the "liability assumed" or in the affidavit, when the "mortgage is given to indemnify the mortgagee against any liability assumed." It is enough if the requirement of the statute be complied with, no matter what words are used or in what part of the instrument the necessary facts are stated. Read the section, the requirements of which it is claimed are not fulfilled : "If such mortgage is given to indemnify the mortgagee against any liability assumed, or to secure the fulfilment of any agreement other than the payment of a debt due from the mortgagor to the mortgagee, such liability or agreement shall be stated truly and specifically in the condition of the mortgage, and the affidavit shall be so far varied as to verify the validity, truth, and justice of such liability or agreement." G. L., *c.* 137, *s.* 9. Now, examine the mortgages and see wherein any failure to meet the requirements of this section appears. Each starts out with a statement, plain as language can make it, that it is given to secure a liability incurred by the mortgagee for the mortgagor, giving truly the amount and nature of that liability. Then comes the further full, true, and specific statement in the formal condition, that "if I or my executors, administrators, or assigns shall pay or cause to be paid unto the Littleton Savings-Bank, their executors or administrators, the sum of $1,000, as shown by my note, dated on or about the 27th of Oct., 1884, payable to said bank or order in ten months from date, and indorsed by George W. Phillips and Charles H. Clark, then these presents shall be void." What language could have been used to show with more absolute accuracy and precision what the liability was ? Does the reading of this mortgage leave the shadow of a doubt or question on the mind of anybody, whether a lawyer or not, as to what the liability was, to secure which the mortgage was given ? Not the slightest. What odds does it make whether the expression used be "shall pay or cause to be paid" the note which the mortgagee had indorsed for the mortgagor, or "shall save harmless the mortgagee for indorsing"? Paying the note is saving harmless the accommodation indorser, and doing it in the most thorough and effective way. Wherein, then, is there any failure to state the liability "truly and specifically" in the condition of the mortgage? There is no such failure. The question is one of interpretation. What the parties meant is to be found, as a fact, from the language they used. What possible doubt as to what they meant does that language leave ? None. A just and fair application of the familiar and approved doctrines of the law of interpretation of writings leaves no room for debate but that the requirements of the statute with respect to the statement of the liability in the condition of the mortgage are not only fully and substantially, but accurately and literally, fulfilled. It makes no difference in what part of the mortgage the statements making up the condition are written. If they are to be found in the in-

strument, that is enough.   The whole paper is to be read together, and then we are to say what it all means.   Are the court going to haggle about words and forms of expression?   It is submitted that if they do so in this case, where substantial and important rights of the plaintiffs are involved, it will be a new thing not only with this court, but a new thing under the sun.   Language is to be interpreted according to its generally received import.   The plaintiffs undertook to assist Phillips by indorsing for him, and to secure themselves took these mortgages in perfect good faith, as they had a right to do.   The attaching creditors gave credit to Phillips without taking security, which they had a right to do.   Is the security of the former to be set aside for the benefit of the latter upon a technicality of the description claimed by the defendant, when that assumed technicality does not bear the slightest examination, really has no existence, but vanishes into thin air the moment the whole mortgage is read together by the side of the statute, in the light of the commonest kind of common-sense?

Now look at the affidavit.   The statute requires that the affidavit " shall be so far varied as to verify the validity, truth, and justice of such liability."   Is this affidavit so far varied?  " We severally swear that the foregoing mortgage is made for the purpose of securing the liability specified in the condition thereof, and for no other purpose whatever; and that said liability was not created for the purpose of enabling the mortgagor to execute said mortgage, but is a just liability honestly due and owing from the mortgagor to said Littleton Savings Bank."

Suppose this affidavit had stopped with the words " but is a just liability:" what substantial requirement of the statute would then be wanting? Webster's definition of "just" is,—"1. Rendering, or disposed to render, to each one his due; conforming or conformable to rectitude; not doing wrong to any; violating no right or obligation; equitable, upright, honest, true.   2. Not transgressing the requirement of truth and propriety; conformed to fact, to the truth of things, to a proper standard, to reasonable expectations, and the like; exact; proper; normal; tasteful; accurate; orderly; regular; due." And he gives as synonyms,—" Equitable; upright; honest; true; fair; impartial; proper; exact; normal; orderly; regular; tasteful."

Can any reasonable man doubt that if the liability had wanted either " truth " or " validity," the parties to this oath would be liable to the pains of perjury, even omitting all that follows?   The three words used in the statute,—" validity," " truth," " justice," —so far as they have application to the subject-matter in hand, are identical in meaning.   It is an instance, not unfrequently met with in statutes, of a reiteration of the same mandate or the same idea by the use of synonymous words; done for emphasis, and out of great caution on the part of the legislature, that no shade of the meaning really embodied in either of the words used shall escape

the mind of the most casual reader. Either one of the words used here, according to the common usage of the language, when applied to such a thing as a liability assumed by one man for another, means the same, and all that the three together mean. You can hardly conceive a "valid" liability which is not just and true; you cannot at all conceive a "true" liability which is not valid and just; nor a "just" liability which is not true and valid.

It is sticking in the bark, putting the thinnest kind of form in the place of substance, to claim that because all three of the words are not used together in the oath the mortgage must fail, when the truth and validity of the liability (even conceding that those words add anything) are unquestioned, and appear over and over again in the mortgage to which the affidavit is appended.

But there is more in the affidavit—"but is a just liability honestly due and owing from the mortgagor to said Littleton Savings Bank." Does this mean anything, or is it to be thrown away as adding nothing to the oath? Evidently the parties put it in for some purpose. Beyond question the words had to them a meaning, and expressed some idea and intention which they undertook by their use to embody in the instrument. It is not likely they meant to make a statement at this point in the instrument, not only false in fact and directly in conflict with what they had twice repeated in it before, but so absurd on its face as to raise a doubt of the mental capacity of the writer. The parties knew, as well as counsel for the defendant or the court know, that the liability of the plaintiffs was not "honestly due and owing from the mortgagor to the Littleton Savings Bank." They did not intend to say it was. If the court, by a literal· and scholastic interpretation, make the paper say that, they will make the paper say what it is most manifest the parties never intended it should say. The parties had already described the liability as it in fact existed. What they intended to say, and what they supposed they did say, and what the whole instrument, read together, says they did say, was, that the debt from the mortgagor to the Littleton Savings Bank, on which the plaintiffs were liable as indorsers, was honestly due. No man could mistake their meaning, or be misled by the form of expression in which they undertook to convey it. That they omitted a word or two which should have been inserted in order to make the syntactical expression strictly correct is evident. But a fair reading of the whole instrument together irresistibly compels the supplying of those words, if necessary, to make the sentence conform to the idioms of the language, and give grammatical expression to the plain and unmistakable meaning of the parties. The court will enforce the meaning as shown by the whole instrument, without reference to the words in which it is expressed, and will suppose omitted words to be supplied, so as to give proper expression to the manifest intention, in order that the thing may live and have validity rather than perish. There is vastly more

authority and vastly more justice in supplying omitted words suitable to express the plainly intended meaning of the parties, than there is for wholly disregarding and throwing away a long and pregnant sentence, like the one here, which the context leaves no possible room for doubt that the parties regarded as important. and wrote into the instrument for an important and manifest purpose.

To put the only sense which it is possible to gather from the whole into words, it would read "but is a just liability for the debt honestly due and owing from the mortgagor to said Littleton Savings Bank." Inserting these three words "for the debt," which no one can for a moment doubt make the sentence mean exactly what the parties intended to say, and supposed they had said in effect, and the astutest cavil of the most precise linguistic critic is disposed of. The truth, validity, justice, exactness, uprightness. honesty, fairness, impartiality, regularity, &c., &c., of the liability are stated, because the fact is stated that the note which the plaintiffs endorsed was due and owing to the bank.

Courts do not exercise ingenuity and astuteness in mere verbal criticism to find some narrow technical or grammatical ground upon which they may overturn a contract fairly and honestly entered into by parties in transacting the every-day and practical business of life. If enough appears to show to the judicial as well as to the common mind what they meant to do, and that the transaction was honest, ingenuity will rather be exercised to find grounds upon which it may be sustained. A different practice would be productive of infinite injustice and mischief,—in fact, would make it necessary for every business man to have a lawyer and a grammarian at his elbow all the time, or else for business men to establish a code for themselves, and avoid appealing to the law and the courts for the ascertainment and vindication of their rights, as they would avoid the pestilence.

In this case we submit that the meaning and intention of the parties are as plain as sunlight from the beginning to the end of these mortgages; that every requirement of the statute is substantially fulfilled; and that this honest transaction should be upheld rather than overturned and destroyed.

Of the last three cases cited by the defendant (*Belknap* v. *Wendell*, 31 N. H. 92, *Hill* v. *Gilman*, 39 N. H. 88, and *Smith* v. *Moore*, 11 N. H. 55) nothing need be said, because their facts do not bear a sufficient resemblance or analogy to those in this case to entitle them to consideration. A first look at *Parker* v. *Morrison*, 46 N. H. 280, may give the impression that that case has some bearing upon the present. It is submitted, however, that a further and more careful examination fairly does away with any such impression.

The mortgage there was given to secure the mortgagee for his liability as surety or accommodation signer upon notes due and owing from the mortgagor to one Aldrich. The oath was,—" We

severally swear that the foregoing mortgage is made for the purpose of securing the *debt* specified in the condition thereof   .   .   . that said *debt*   .   .   . is a just *debt*, honestly due and owing *from the mortgagor to the mortgagee*"—not varied at all "to verify the validity, truth, and justice of such liability," but, on the contrary, expressly stating that it was given to secure a debt, which was not true.

Compare this oath with the one here, and it sufficiently appears that the case is no authority against these plaintiffs.   In the present case the contention of the plaintiffs is, that the requirements of the statute are fully, substantially, and fairly met by the form of the affidavit, not that the requirement of the statute can be dispensed with.

CARPENTER, J.   The statute provides that "Each mortgagor and mortgagee shall make and subscribe an affidavit in substance as follows: We severally swear that the foregoing mortgage is made for the purpose of securing the debt specified in the condition thereof and for no other purpose whatever, and that said debt was not created for the purpose of enabling the mortgagor to execute said mortgage, but is a just debt, honestly due, and owing from the mortgagor to the mortgagee;" that "If such mortgage is given to indemnify the mortgagee against any liability assumed, or to secure the fulfilment of any agreement other than for the payment of a debt due from the mortgagor to the mortgagee, such liability or agreement shall be stated truly and specifically in the condition of the mortgage, and the affidavit shall be so far varied as to verify the validity, truth, and justice of such liability or agreement;" and that "All wilful falsehood committed in any such affidavit shall be deemed perjury, and punished accordingly."   G. L., c. 137, ss. 6, 9, and 11.

A debt due and owing from the mortgagor and mortgagees to the bank is described in the condition, but no liability of the mortgagor to the mortgagees, or liability assumed by the latter for the former, is specified or suggested.   The mortgagees placed their names upon the back of the note before it was negotiated to the payee, and were original promisors.   Although styled indorsers in legal effect, they are described in the condition as makers.  *Martin v. Boyd*, 11 N. H. 385; *Benton v. Willard*, 17 N. H. 593; *Currier v. Fellows*, 27 N. H. 366.   There is nothing in the condition or in the note itself from which it could be inferred that they were sureties.   Upon the face of the papers they are principals.  *Whitehouse v. Hanson*, 42 N. H. 9; *Maynard v. Fellows*, 43 N. H. 258.   The defect in the condition is not cured by the statement of the consideration of the mortgage.   No reference to it is made in the condition.   What the "$1,000 liability incurred" for the mortgagor by the mortgagees was is not stated.   It might be the liability on the note for $1,000 subsequently described, or it might be any other

liability for that amount.    It is not sufficient that one reading the
mortgage would more naturally suppose it to be the former.    The
liability intended to be secured is not to be left to conjecture or
inference.    It must be truly and specifically stated.    It is not
necessary now to determine whether a true and specific statement
of the liability in the body of the mortgage, so referred to that it
might by construction be deemed a part of the condition, would be
sufficient.    *Stone* v. *Marvel*, 45 N. H. 481.

The affidavit is insufficient.    It is not so far varied as to verify
the validity, truth, and justice of the liability intended to be
secured.    It makes no allusion to any liability of the mortgagor to
the mortgagees.    It verifies nothing except the validity, truth, and
justice of the indebtedness of the mortgagor to the bank.    *Parker*
v. *Morrison*, 46 N. H. 280.    The parties could not be convicted of
perjury if they were all principals upon the note, if the mortgagees
were principals and the mortgagor their surety, or if the names of
the mortgagees were not upon the note.    In all these cases the
affidavit would be strictly true.

It is not necessary to consider the other questions raised in the
case.

*Judgment for the defendant.*

ALLEN and BINGHAM, JJ., did not sit: the others concurred.