Grafton, }
June 5, 1923. }

PLINY B. GOUDIE *v.* AMERICAN MOORE PEG CO.

WILLIAM T. FERNS *v.* SAME.

BUFFALO FORGE CO., INC., *v.* SAME.

UNITED SHOE MACHINERY CO. *v.* SYLVANUS D. MORGAN, Receiver.

EMERSON DRY KILN CO. *v.* SAME.

A receiver has only the title which the corporation has to which he succeeds, and he takes the property subject to all existing liens, and also subject to an attachment made to secure a lien upon permission of the court in the suit appointing him receiver.

The rule that lienors under P. S., c. 141, ss. 10–18, have precedence in the order their right of action accrued (*Kendall* v. *Pickard*, 67 N. H. 470) and the rule that priority is determined by the order in which their work commenced (*Virgin* v. *Britton*, 80 N. H. 340) are necessarily in conflict and both rules are incompatible with the equitable rule of *pro rata* division which elsewhere obtains.

Whether notes were taken in discharge of a lien depends upon the understanding of the parties at the time, which is a question of fact upon which the date of payment is merely evidence; and *semble* that the burden rests with the person claiming the defeat of the lien.

Under Laws 1905, c. 41, a lien may be had upon materials furnished toward a building though not incorporated therein.

A conditional title valid where created is valid in this state despite non-compliance with P. S., *c.* 140, *s.* 23, and a vendor's lien valid at common law is presumably valid in the states which were originally English colonies.

A vendor's lien reserved in this state without compliance with P. S., *c.* 140, *s.* 23, is invalid only against attaching creditors and subsequent purchasers without notice; a corporation composed of the persons who formed the partnership to which the corporation succeeded is a purchaser with notice.

It is not the practice to consider difficult questions of law, when it appears the decision will not aid the .trial or is not material to any issue determinable in the pending case nor unless it appears that the litigation will be thereby advanced.

An exception to a finding of fact will not be considered unless the evidence is transferred on which the finding is based.

THREE ACTIONS, to enforce liens.

TWO PETITIONS, for return of property by a receiver.

Goudie, Ferns, and the Buffalo Forge Co. bring suit to enforce builders' liens. Laws 1905, *c.* 41; P. S., *c.* 141, *ss.* 10–18. In the writs in the Goudie and Buffalo Forge Co. suits there was a special command directing an attachment to secure and preserve the plaintiffs' liens. The sheriff's return followed the command.

The writ in the Ferns' suit contained the recital: "This writ is brought for the purpose of securing a mechanic's lien." There was no command for a special attachment, but the sheriff returned a special attachment of the defendant's mill for the purpose of securing the plaintiff's lien thereon. In the writ in the Buffalo Forge Co. suit the sheriff was specifically commanded to attach certain machinery furnished by the plaintiff as well as the buildings and land, and returned an attachment according to the mandate of the writ.

The attachments were made in the following order: Goudie, Ferns, Buffalo Forge Co. The plaintiffs' rights of action severally accrued as follows: Buffalo Forge Co., Goudie, Ferns. They severally began work as follows: Ferns, Goudie, Buffalo Forge Co. The amount of the plaintiffs' claims is: Goudie, $1,768.50; Ferns, $2,103.83; Buffalo Forge Co., $1,764.30, with interest and costs. Notes and trade acceptances were accepted by the plaintiffs on account of their several claims. The notes given Goudie and Ferns were payable at a time when their liens would have expired if no action had been brought. The court, *Sawyer*, J., found that the notes and acceptances were not taken in discharge of the amount due and of the lien and ruled that the plaintiffs could enforce their liens by attachment, and reserved the question of the sufficiency of Ferns'

writ, and also the question of priority between the lienors, as important questions of law.

The United Shoe Machinery Co. and the Emerson Dry Kiln Co. ask for the return of property sold by them to the Moore Peg Co. upon the condition that the title should remain in the vendors until paid for. The property furnished by the Emerson Dry Kiln Co. has not been affixed to the real estate or attached. The machine furnished by the United Machinery Co. has been fastened to the floor of the mill by lag screws and connected with other machinery by belting, but has not been specifically attached. The property when sold to the partnership was not in this state. The American Moore Peg Co. is a corporation organized under Laws 1919, *c.* 92. The incorporators were the persons who composed a partnership known as the Moore Peg Co. The corporation succeeded to all the property and rights of the partnership and assumed all its liabilities.

The title to the real estate was by a deed held in escrow until a balance of $8,000 should be paid. This sum has been paid by a receiver, who excepted to the foregoing rulings. The court ruled that the receiver's certificate, issued to raise the $8,000, had priority over all liens.

*Shurtleff, Oakes & Hinkley (Mr. Oakes* orally), for Goudie.

*Raymond U. Smith* (by brief and orally), for the Buffalo Forge Co.

*Murchie & Murchie (Mr. Alexander Murchie* orally), for Ferns.

*Allen Hollis* and *George W. Pike (Mr. Pike* orally), for the defendant American Moore Peg Co. and the receiver.

*Walter Bates Farr* (of Massachusetts), for the United Shoe Machinery Co.

*Ben S. Webb* and *Clark B. Frost,* for the Emerson Dry Kiln Co.

PARSONS, C. J. "No lien shall be defeated by taking a note, unless it was taken in discharge of the amount due and of the lien." P. S., *c.* 141, *s.* 18. Whether the notes and acceptances were taken in discharge of the amount due and of the lien depends upon the understanding of the parties at the time. *Calef* v. *Brinley,* 58 N. H. 90. What that was is a question of fact upon which the date of payment is merely evidence. *Moore* v. *Fitz,* 59 N. H. 572. If, as

the words of the statute seem to imply, the burden rests with one claiming the defeat of the lien by the taking of a note, the exception to the finding of the court cannot be sustained unless the evidence conclusively establishes the contrary, while if the burden rests with the party claiming the lien, the finding must be sustained if there was any substantial evidence to support it. As the evidence upon which the court found the notes and acceptances were not given in discharge of the amount due and of the lien is not transferred, neither question is brought here by the exception to the finding of fact.

"Any such lien may be secured by attachment of the property upon which it exists at any time while the lien continues — the writ and return thereon distinctly expressing that purpose." P. S., c. 141, s. 17. The Ferns' writ is claimed to be defective in that the mandate of the writ does not command the sheriff to attach the property upon which the lien is claimed for the purpose of securing it. The contention is supported by authority. *Bryant* v. *Warren*, 51 N. H. 213; *Hill* v. *Callahan*, 58 N. H. 497; *Wason* v. *Martel*, 68 N. H. 560; *Hopkins* v. *Rays*, 68 N. H. 164. If the contention is sound, Ferns' attachment falls behind the others who have properly secured their liens. His attachment, however, is good against the defendant Peg Co. and any liens thereafter attaching. When or upon what grounds the receiver was appointed does not appear. No question as to the validity of his appointment has been raised. Whenever and upon whatever grounds he was appointed, he took the property subject to all existing liens. High on Receivers (4th *ed.*), *ss.* 138, 440. If the attachments were all made before the receiver's appointment and possession, an attachment lien without reference to whether a mechanic's lien was thereby secured is valid as against him. The object of the statutory provision requiring the purpose to secure a lien to be distinctly expressed in the writ is obviously to give notice to other claimants. While the facts are not stated in the case, it was conceded at the argument that the three suits were brought to secure the liens upon permission of the court granted upon petitions in the proceeding in which the receiver was appointed and to which he was necessarily a party. Whether the court had or had not power by injunction to delay or embarrass these plaintiffs in the exercise of their statutory right, the receiver cannot be permitted to take advantage of the exercise of judicial power, possibly excessive, made in his behalf and presumably at his request. Having been a party to the proceeding in which Ferns asked leave to attach for the purpose of securing his lien, he cannot be heard to allege ignorance of the

purpose of Ferns' attachment. Knowing Ferns' writ was so brought he cannot be harmed by an amendment permitting such purpose to be now distinctly expressed in the writ, if such amendment is technically necessary.

. The question of priority between lienors is reserved by the court as an important question of law. Generally where different mechanics and material men are concerned in the construction of a building and the building when completed is not of sufficient value to meet all the charges of its construction, the building is sold and the proceeds divided *pro rata* among those whose labor and property contributed to its construction, regardless of whether the claims are for labor or for materials, or of the times when the several claimants entered into their contracts for what they did or furnished, or actually commenced the performance of their parts of the work, or of the furnishing of materials, or of the times when the various lien claims or notice were filed. 27 Cyc. 230, 231; 2 Jones on Liens (3rd *ed.*), *s.* 1492. This is the only equitable arrangement. "The building is the result of the labor and materials of various persons — material men, stone-masons, brick-layers, carpenters, painters, &c. The work of some of these must precede that of others, but each contributes his proper share to the value of the structure. Its value, when finished, is derived from these several contributions. It is not the product of one man's materials, or another man's labor, but is the result of the contributions of all. All, then, should share in its proceeds, if it go to sale. There is no good reason why the man who, of necessity, or by accident, begins before another, should have priority. The painter and glazier may add far more to the value of the building than the mason who merely lays the foundation; yet, if priorities exist, he may get nothing whatever, while the latter is fully paid. The brick-layer and carpenter usually commence about the same time; and if priorities are allowed, the accident of one beginning a day before the other, may give him a ruinous advantage." *Choteau* v. *Thompson,* 2 Ohio St. 114, 129. A rule which makes priority depend upon the completion of the work, the time when suit may be brought in each case, may prove in application to be attended with equal if not greater injustice.

*Kendall* v. *Pickard,* 67 N. H. 470, decided in 1893, presented the controversy of six lien holders for labor and materials in building a house. All the liens were duly secured by attachment, but the property was insufficient to pay all the claims in full. The first attaching creditors insisted their claims should be paid in full, while the others

contended for a proportional distribution of the property upon all the claims. The lack of equity in the former claim was ably presented in argument, but the conclusion was that the statute did not permit a proportional distribution and that the lien holders should have precedence in the order their liens accrued. In the discussion, the priority of a lien is treated as determined by the date the right of action accrued, which would ordinarily be upon the completion of the contract. In *Virgin* v. *Britton*, 80 N. H. 340, decided in 1922, the question was between the claim of a mortgagee and two lien holders. It was held that as between the lien holders and the mortgagee the time of commencing work by the claimants of the mechanics' liens gave them priority as against moneys subsequently advanced by the mortgagee and incidentally that, as between the lien holders themselves, the question of priority was also determined by the time the work commenced. These two decisions are necessarily in conflict. The fact of conflict sustains the suggestion that the question is an important one, but also establishes that it is one not free from difficulty. It is not the practice to consider difficult questions of law when it appears the decision will not aid the trial. *Fitzhugh* v. *Railway*, 80 N. H. 185, 190. The court does not pass in advance upon abstract questions unless it appears that the litigation will be advanced by so doing. *Knight* v. *Haverhill*, 77 N. H. 487, 489. To the receiver the question of priority between the three lien holders is of no importance. *Hodgdon* v. *Darling*, 61 N. H. 582; *Thayer* v. *Padelford*, 69 N. H. 301. If the administration of his trust requires the redemption from one attachment, he must redeem from all. The lien holders can enforce their claims only by levy on execution. *Kendall* v. *Pickard*, 67 N. H. 470, 473; *Thayer* v. *Padelford*, 69 N. H. 301. The question of priority is of interest to them only if the security is insufficient to pay in full all their claims, which total between $5,000 and $6,000. If the receiver's payment of $8,000 to take the deed of the Peg Company's real estate out of escrow opens the real estate to set-off on execution, it is evident the security is ample to pay the claims of the lien holders in full. If the receiver is entitled to hold this payment as an equitable mortgage against the property, the equity over such a mortgage is apparently of sufficient value to pay the plaintiffs' claims in full. It is not probable any question of priority will arise between the plaintiffs and the receiver. Despite the opinion of the trial justice announced as a ruling, the question will remain open until it becomes in some way material.

When a question has been transferred "as being of legal importance," it has been considered, although its relation to the controversy is not entirely clear. *Stavrelis* v. *Zacharias*, 79 N. H. 146. But a question mooted between the parties is not considered unless it has some possible relation to the litigation. *Attorney-General* v. *Fogarty*, 73 N. H. 607; *Page* v. *Portsmouth*, 76 N. H. 372; *Glover* v. *Baker*, 76 N. H. 261, 262. The question transferred is not material to any issue determinable in the pending case. It may possibly arise between the plaintiffs, and between them alone, after judgment and levy. Its consideration is postponed until it arises.

The Buffalo Forge Co. claimed a lien upon certain machinery and directed a special attachment, which appears to have been made. Under *c.* 41, Laws 1905, a lien may be had upon materials furnished as well as upon the building itself. The material so furnished and not incorporated into the building is covered by the lien of the material man furnishing the same. *Virgin* v. *Britton*, 80 N. H. 340, 342.

Section 23, Chapter 140 of the Public Statutes prescribing the essentials to the validity of a lien reserved upon personal property sold conditionally and passing into the hands of the conditional purchaser as against attaching creditors, or subsequent purchasers without notice, has no extra-territorial effect. A conditional title valid where created is valid here, despite non-compliance with the New Hampshire statute. *Davis* v. *Osgood*, 69 N. H. 427, 428; *Dorntee Casket Co.* v. *Gunnison*, 69 N. H. 297; *Cleveland Machine Works* v. *Lang*, 67 N. H. 348. At common law the lien reserved is valid. In the absence of evidence to the contrary, that law is assumed to govern in the states originally English colonies. *Kimball* v. *Kimball*, 75 N. H. 291, 292; 12 C. J., *p.* 200, *s.* 32. The lien reserved being valid at the place of contract, is valid here, even if invalid if reserved in this state. Such a lien reserved in this state without the memorandum and record required by the statute is invalid only against the claims of attaching creditors and subsequent purchasers without notice. *Michelson* v. *Collins*, 72 N. H. 554; *Sinclair* v. *Wheeler*, 69 N. H. 538; *Hodgdon* v. *Libby*, 69 N. H. 136; *Adams* v. *Lee*, 64 N. H. 421. The corporation defendant is composed of the persons forming the partnership, the Moore Peg Co., which it succeeded. It is not found, and could not be found, that the corporation taking the property from the partnership is a purchaser without notice. The corporation acquired no greater right than its vendor and the receiver of the corporation has only the title the corporation had. High on Receivers (4th *ed.*), *ss.* 440, 441.

The property claimed by the Emerson Dry Kiln Co., Inc., has not been affixed to the real estate and has not been attached by any creditor. Even if the sale were made in this state the petitioner's title would be valid against all the parties to this proceeding.

In the absence of a specific attachment the marking machine stands the same unless the attachment of the real estate is a seizure of the machine. As the New Hampshire statute has no application, it is unnecessary to consider whether, if applicable, the property comes within its terms.

*Case discharged.*

All concurred.