## HOLMGREN v. KEENE OIL CO. et al.
### No. 258.

District Court, D. New Hampshire.
March 7, 1935.

Roy M. Pickard, of Keene, N. H., for Keene Oil Co.

Ralph G. Smith, of Hillsboro, N. H., for John C. Warne.

Samuel T. Holmgren, of Concord, N. H., for trustee.

MORRIS, District Judge.

This is an action brought to recover of the defendants assets alleged to belong to the bankrupt's estate.

On the 19th day of August, 1933, Leroy C. Gilbert of Hillsboro, county of Hillsboro, state of New Hampshire, was adjudged a voluntary bankrupt. On May 15, 1934, the case was closed as a no-asset case. On July 10, 1934, the bankruptcy case was reopened upon the petition of Wesley M. Brush, a creditor of the bankrupt. On July 25, 1934, Carl M. Holmgren was appointed trustee and duly qualified. On September 4, 1934, the trustee brought this bill in equity alleging that the bankrupt was on or before the 31st day of July, 1933, the owner and in possession of certain property consisting of a number of bulk oil storage tanks, an oil pump and house in which the same was located, and a 1931 Model AA Ford oil truck, all of the value of approximately $3,500; and that the Keene Oil Company and John C. Warne claimed certain liens and rights to the aforesaid property under five purported mortgages, which liens the trustee alleges are invalid and were made with the intent and purpose of hindering, delaying, and defrauding other creditors of said bankrupt.

On September 13, 1934, the Keene Oil Company filed its answer denying the invalidity of its mortgages and other material allegations in the plaintiff's bill of complaint. On September 25, 1934, the answer of John C. Warne was filed denying the material allegations of the bill of complaint which answer was amended by leave of the court on January 3, 1935.

The case came on for hearing upon its merits January 3, 1935, and upon consideration of the evidence and arguments of counsel I make the following findings of fact and rulings of law:

Prior to April 29, 1932, Leroy C. Gilbert, then doing business at Hillsboro, N. H., under the name of the Hillsboro Oil Company, was the owner of three bulk oil storage tanks, pump, and house in which the same was situated, located on land of the Boston & Maine Railroad. He was also the owner of a truck and tank used for the distribution of kerosene, gasolene, etc. This property was free and clear from any encumbrance. The series of events which might furnish the basis for a legal comedy and which were the beginning of the facts material to a decision of this action began with an attachment placed upon the abovementioned property on or about April 27, 1932, by one Richard Cross in an attempt to collect two promissory notes given him by the bankrupt, one for $100 and the other for $900. The ad damnum in the writ was for $1,500. By reason of this attachment, the bankrupt was prevented from further carrying on his business, and in an effort to release the attachment he consulted Walter H. Jaques, an experienced oil salesman, in whom he had great confidence. He was advised that in order to release the attachment he would have to secure a receiptor. Jaques declined to become a receiptor, and thereupon the bankrupt applied to his father-in-law, John C. Warne, who after some discussion concerning security did receipt

for the property to the sheriff and thus secured its release.

Warne's testimony was that when Gilbert asked him to become receptor for the property he, Warne, consulted his wife who did not want him to do so unless Gilbert secured him for a sum of $800, which it was claimed he owed and also secured Warne for receipting for the property.

I find that Gilbert went to the office of Mr. Doone in Henniker and had two chattel mortgages drawn up covering the property that had been attached. These two mortgages were made in favor of Walter Jaques of West Medford, Mass., one covering the bulk oil storage tanks, pump, and house and the other the Ford oil truck. The first mentioned mortgage purports to be given to secure a note for $1,200, of even date with the mortgage, and the second note purports to be given to secure a promissory note of $800, of even date with the mortgage. Both mortgages are dated April 29, 1932. It is admitted by both Gilbert and Jaques that Gilbert was not at that time owing Jaques any sum of money. As to whether Jaques was present when these mortgages were made is rather uncertain upon the testimony. Gilbert says he was. Jaques denies this. In view of the fact that Jaques did not sign the mortgages in the presence of Doone but executed them in Massachusetts before a notary public, I am inclined to find it more probable than otherwise that Jaques was not present when the mortgages were made. On the same day, April 29, 1932, Gilbert made two more mortgages covering the same property. One purporting to be for the sum of $1,000, made for the purpose of securing a note of even date for that sum covering the storage tanks, oil pump, and house, and the other for the sum of $800, purporting to cover a promissory note of even date with the mortgage covering the Ford tank truck. Both these mortgages were executed before James W. Doone. The Warne mortgages were not made subject to the Jaques mortgages, neither were the Jaques mortgages made subject to the Warne mortgages. The Warne mortgages were duly recorded on April 30, 1932. The Jaques mortgages were not finally completely executed until June 30, 1932, and were not recorded until August 11, 1932.

It is noted that both the Jaques mortgages and notes were signed by Merine W. Gilbert, wife of the bankrupt, and Emma B. Warne, divorced wife of John B. Warne. It does not appear in the testimony why these notes and mortgages were so signed. John B. Warne testified that he did not know of the Jaques mortgages until shortly prior to May 31, 1933. I am inclined to so find. Jaques must have known of the Warne mortgages because he knew that the property was attached; he refused to receipt for it and knew that Gilbert had obtained his father-in-law as a receptor thereby releasing the attachment.

Business relations between Gilbert, Jaques, and the Keene Oil Company continued thereafter. Neither of the Jaques mortgages were executed in accordance with N. H. Pub. Laws c. 216, §§ 8 or 9, which provides that each mortgagor and mortgagee shall make and subscribe an affidavit as follows (section 8): "We severally swear that the foregoing mortgage is made for the purpose of securing the debt specified in the condition thereof, and for no other purpose whatever, and that said debt was not created for the purpose of enabling the mortgagor to execute said mortgage, but is a just debt, honestly due and owing from the mortgagor to the mortgagee." Section 9 provides: "Where a mortgage is given in whole or in part as security for notes or bonds thereafter to be issued, or other expectant future obligations, the affidavit need not refer to the same as presently due and owing, but may be so varied as to aver that they will be just obligations honestly due and owing when and as they are issued or come into existence."

As I have already found, there was no indebtedness from Gilbert to Jaques at the time the mortgages were executed. Jaques claimed that the mortgage was given to secure him, Jaques, for guaranteeing to the extent of $2,000 Gilbert's account with the Keene Oil Company of which he, Jaques, was treasurer and a stockholder. He testified that the Keene Oil Company was to extend credit to Gilbert up to $2,000, and that he personally guaranteed that amount. Gilbert's testimony on this point is rather shifty. I am inclined to find and do find that there was an agreement that the Keene Oil Company should extend credit to Gilbert. This was not the sole purpose for executing the mortgages at the time they were written. Both Gilbert and Jaques had in mind that it was necessary to cover the property to prevent any further attachments thereon by Gilbert's creditors. According to the mortgages, they were given and taken to secure a just debt honestly due

and owing from the mortgagor to the mortgagee. The oath which they took and subscribed was not varied to cover future obligations as required by section 9 above quoted.

On the 30th day of June, 1933, Jaques made the following assignments of both mortgages, which assignments were recorded on the same day the mortgages were recorded: "For value received, I hereby sell, assign and set over the within mortgage, note and the debt secured thereby to the Keene Oil Company, a corporation of Keene, New Hampshire."

Prior to April 29, 1932, Gilbert and the Keene Oil Company had dealt with each other on a cash basis. Mr. Paul D. Minnick, president and general manager of the Keene Oil Company, testified that on that date, April 29th, there was nothing due from Gilbert to the company, but that after he learned from Jaques about the mortgages, he was instructed to give credit to Gilbert for a certain amount which he did. I find that Gilbert's account with the Keene Oil Company was thereafter on or about July 1, 1932, $2,883.62. By July 21, 1933, Gilbert's account with the Keene Oil Company had increased to $3,405.22. On that day the oil company posted notices of a foreclosure sale upon the storage tanks and Ford car to be held Monday July 31, 1933, at 10 a. m. The notice is signed by the Keene Oil Company, assignee, and states that: "This sale is held by reason of the default in the terms of payment of the notes secured by mortgages covering the above property, said defaults being more than thirty days old. See Hillsborough town record, Book 10, pages 253 and 254."

The Jaques notes referred to in the notice of sales were dated April 29, 1932, and were written on one year's time, so that they became due April 29, 1933. The sale was held in accordance with the notice. The Keene Oil Company being the only bidder the property was struck off to it for the sum of $2,170, it being the amount of the notes with added interest and costs. Gilbert's account was credited with the above sum.

I find that at the time of the foreclosure of the chattel mortgages that both the Keene Oil Company and Jaques had reason to know and did know that Gilbert was insolvent and that by the foreclosure sale he was being deprived of all assets which could have been sold by a trustee in bankruptcy to be distributed among his other creditors. I further find that all charges of the Keene Oil Company were made directly against Leroy C. Gilbert, the bankrupt, and that the Keene Oil Company never called upon Jaques to pay any part of Gilbert's account; that there was no written agreement between Jaques and the Keene Oil Company by which Jaques guaranteed any part of Gilbert's account; and that Jaques has never paid anything on any guarantee that he claims to have made. I find that it is more probable than otherwise that he never did make any such guarantee, certainly not such as would be enforceable at law.

It is noted that after Gilbert had been credited with the proceeds of the mortgage sale, there was still left on open account the sum of $1,235.22. On May 20, 1933, the Keene Oil Company brought suit against Gilbert, the writ being returnable to the superior court at Keene on the second Tuesday of September, 1933. An attachment of the contents of the storage tanks was made, namely, 6,766 gallons of gasolene and about 5,686 gallons of kerosene. Paul Minnick was put in as keeper. No service of this writ was made upon the defendant. On September 21, 1933, the action having been entered in court, Roy M. Pickard, attorney for the Keene Oil Company, wrote a letter to Gilbert as follows: "You will remember that the Keene Oil Company attached last spring various oil and gas in your tanks on a bill against you for their open account. This was sold and the money turned over by cashier's check to Edward H. Lord, the attaching officer. It amounts to $1,207.84. The case is now in court and when I wrote to Mr. Doone a few days ago to enter his appearance for you, he said he no longer represented you. I did not go to the expense of having an attachment made and it is necessary for you or your lawyer to enter your appearance or I must start over again attaching the money in the sheriff's hands. I think that you admit that you have no further interest in this money and that it is to be used in payment of the open account of the Keene Oil Company against you. I wish therefore that you would sign and send back the inclosed paper in order that I may close the matter up without any more expense or delay. The amount of the bill is somewhat larger than the amount of the cash in the hands of the sheriff but we will adjust the matter for this amount. Will you sign and send back the inclosed statement?"

The inclosed paper reads as follows: "I, Leroy C. Gilbert of Hillsborough, doing business as the Hillsboro Oil Company hereby accept service of the writ of the Keene Oil Company against me in which the said oil company seeks to secure payment of its open account and in which oil and gas was attached. I also agree that a judgment may be entered in favor of the Keene Oil Company for the amount of the money in sheriff's hands, to wit, $1,207.84, which is a judgment in full against me for any open accounts amounting to $1,235.22, and upon the entry of this judgment and the payment of the money to the Keene Oil Company from the hands of Edward H. Lord, deputy sheriff, I am to have a full and complete release in connection with said open account."

The record of the clerk of the superior court shows that service was accepted and the above agreement filed in court September 26, 1933. The order was as follows: "If a claimant appears for funds a bond of $200, is to be filed to cover costs by November 10, 1933."

On November 1, 1933, a bond of $200 was filed by Wesley Brush, claimant. On July 14, 1934, bankruptcy of the defendant was suggested by Doyle & Doyle, appearing for the bankrupt.

As hereinabove stated, two chattel mortgages were given by Gilbert to Warne on April 29, 1932, covering the same property mentioned in the Jaques mortgages. The $1,000 note and mortgage was admittedly given for the purpose of securing Warne for receipting to the sheriff for the property attached on the Cross writ. The mortgage purports to secure a note for $1,000 dated April 29, 1932, payable one year from date with interest annually. No other obligation was intended to be secured by this mortgage. The mortgage appears to be properly executed and recorded, but the oath therein was not changed to properly state the obligation secured as provided in section 9 of the New Hampshire statutes above quoted.

The other mortgage purports to secure a note for $800, dated April 29, 1932, payable to John C. Warne one year from date with interest.

With reference to the $800 note, Warne testified as follows:

"What agreement did you make with Gilbert relation to your signing as receiptor for him? A. The agreement was that he was owing me $800. My wife did not want me to go receiptor unless I got covered for the whole of it.

"Q. And you agreed to a receiptor? A. I did.

"Q. Did you go receiptor? A. Yes."

Cross-examination:

"Q. You referred to some notes for $800? A. Yes.

"Q. Were those notes delivered at the time these mortgages were given? A. No, given in 1927 and 1928.

"Q. Deliver them to Mr. Gilbert at this time when the mortgage was executed? A. He gave me notes, he borrowed money off me and he gave me some notes 1927, 1928.

"Q. When he gave you a note for $800 to secure this mortgage that was in addition to the other notes? that you had, is that right? What was done with those notes since 1927? A. Destroyed in a fire.

"Q. When? A. Last March, February or March.

"Q. They were in your possession since April 29, 1932? A. 1928, 1929 somewhere along there."

If Gilbert was actually indebted to Warne in the sum of $800 at the time the mortgage was given, there appears no reason why his security on the truck is not valid. It is rather significant that when Gilbert made out his bankruptcy schedules that he did not list Warne either as a secured or unsecured creditor, and that Warne never proved his claim. It is also significant that the mortgage on the truck was made for exactly $800, it being for the same amount as the mortgage thereon given to Jaques. I would naturally expect that if $800 was the aggregate of prior notes given by Gilbert to Warne, that they would have been surrendered. According to the testimony, they remained in Warne's hands, if there were any such, until destroyed by fire in February or March, 1934. Gilbert's excuse for not listing Warne as a creditor was that it was a family matter and, as a bankrupt, he considered that he did not owe him. This is hardly a sufficient explanation because if the indebtedness had been actual and called to the attention of the attorney Mr. Doyle, when the schedules were made, Warne would have been listed as a creditor.

Considering all the testimony, I have grave doubts concerning Warne's claim and I think it is more probable than otherwise that it is fictitious and that the mortgage

for $800 was given as an additional cover to protect the bankrupt's property from further attachment.

But this is not the entire history of the Warne mortgages. Some time prior to May 31, 1933, Warne appears to have received information that his mortgages of April 29, 1932, were defective. Thereupon he went to attorney Ralph G. Smith for advice with the result that on May 31, 1933, a new chattel mortgage was executed covering the Ford truck and bulk oil tanks, the said mortgage being given for the sum of $1,800, the description of the obligation contained in the mortgage being as follows: "To save the said John C. Warne harmless from having on or about the 29th day of April 1932, signed as receiptor for certain goods and chattels and at the request of the said Leroy C. Gilbert which goods and chattels were attached on a certain action in which one Richard Cross was the plaintiff and the said Leroy C. Gilbert was the defendant."

This mortgage was given subject to whatever prior mortgages or claims then existing upon the goods and chattels which had theretofore been given by the said Leroy C. Gilbert. While it appears that the condition in the mortgage is carefully stated, the oath is not changed to conform to the condition. The word "obligation" should have been substituted for the word "debt." Therefore, the oath does not conform to section 9 of the Public Laws above quoted.

This mortgage of May 31, 1933, antedated the auction sale of the same property by the Keene Oil Company July 31, 1933, by two months. Warne was not given notice of the sale but was present, and, so far as appears, did not object.

The fact that the Warne mortgage of 1933 was for the sum of $1,800, being the aggregate of the two mortgages of April 29, 1932, and mentions in its condition no existing $800 indebtedness furnishes a further reasoning for my findings of fact that the claim of $800 indebtedness of Gilbert to Warne is fictitious.

On December 15, 1933, a suit was brought by Wilder H. King, deputy sheriff, and Richard K. Cross against John C. Warne returnable at the January term of the superior court in Hillsborough county upon Warne's receipt to the sheriff. This suit is still pending. The amount of the judgment to which the plaintiff will be entitled, if any, must be dependent upon the amount recovered by Cross in his original action against Gilbert.

The original Cross suit also appears to have had a checkered history. The specification in the action set forth two promissory notes given by Gilbert to Cross; one for $100 payable on demand and one for $900 payable in one year from date. The writ was dated, served, and made returnable prior to the maturity of the $900 note. Gilbert employed counsel to take care of his interest in the Cross suit. Counsel failed to enter his appearance and judgment went against Gilbert by default. When Warne learned of the situation, he filed a motion for leave to appear as an interested party, and, after hearing, his motion was granted, judgment in the suit set aside, execution recalled, and the suit is now pending for a determination of whether Cross is entitled to a judgment for the amount of both notes, interest, and costs, or whether his judgment is to be limited to the amount of the $100 note with interest and costs.

As I view the matter, the only materiality of the facts above set forth relating to the Cross suit is if Cross' judgment is limited to $100 and the Warne mortgages given to secure him as receiptor are held valid, then there might be considerable equity in the mortgaged property for the bankrupt's estate.

Just how Wesley Brush enters into the picture is not very clear from the evidence. There is some evidence tending to show that for some time prior to the date of the writ brought by the Keene Oil Company against Gilbert May 20, 1933, Brush had been handling the oil business and dealing with the Keene Oil Company as an individual; that the oil was delivered to the storage tanks covered by the mortgages; and that Brush paid the Keene Oil Company for its products so delivered; that one day prior to the date of the above-mentioned writ there was a large shipment of oil and the tanks were nearly filled. It does not appear to whom it was charged on the books of the company. The next day the suit was brought by the Keene Oil Company against Gilbert to recover the balance of $1,235.22 on open account against Gilbert. This was the balance due after crediting the proceeds of the auction sale. Gilbert accepted service on the writ and agreed to a judgment against him as hereinbefore set forth. The property attached was sold for the sum of $1,207.84. Brush entered as claimant of the amount in the sheriff's hands.

■ The facts so far as disclosed indicate pretty sharp practice on the part of the Keene Oil Company, particularly as Gilbert's insolvent condition was known to it. This attachment being within four months prior to the filing of the petition in bankruptcy, August 17, 1933, is considered an attempt on the part of the company to secure a preference and is void as against the trustee in bankruptcy. Whether Brush can establish his ownership to the funds is a question that can be determined in the bankruptcy court. Clearly, the fund belongs to the trustee as against any claim of the Keene Oil Company.

Subsequent to the foreclosure of its chattel mortgages, the Keene Oil Company paid the following bills in connection with the property foreclosed:

| | |
|---|---:|
| Taxes for 1933 | $ 60.00 |
| Taxes for 1934 | 68.70 |
| B & M R. R. lease 1933 | 48.00 |
| Additional wire | 10.00 |
| B & M R. R. lease 1934 | 48.00 |
| Hillsborough Woolen Co., sidetrack 2 years | 100.00 |
| N. H. Power Company | 48.00 |
| Insurance two years | 40.00 |
| | $422.70 |

I find from the testimony that the bankrupt, Wesley Brush, and attorney for the trustee in bankruptcy had several conferences as early as January, 1933, in an effort to make some amicable arrangement between the bankrupt and his creditors and it is more probable than otherwise that at those conferences the Keene Oil Company's claims and the invalidity of the mortgages were discussed. It does not appear that Brush was even a creditor of Leroy C. Gilbert at that time. He was, however, a creditor to a considerable amount at the time he petitioned to have the bankruptcy case reopened. As I understand the claim of counsel for the Keene Oil Company, it is claimed that Brush having knowledge of the invalidity of the Keene Oil Company's mortgage and the Warne mortgages, that he has no standing in court and that he cannot share in the distribution of any assets derived from the property covered by the mortgages. Counsel cite the following cases: Sumner v. Town of Dalton, 58 N. H. 295; Gooding v. Riley, 50 N. H. 400; Roberts v. Crawford, 58 N. H. 499; Lovell v. Osgood, 60 N. H. 71; Hodgdon v. Libby, 69 N. H. 136, 43 A. 312.

■ Whether Brush can share in the distribution of the estate is a question for the bankruptcy court.

When the estate was opened on Brush's petition, from which no appeal was taken, all other creditors of Gilbert, of which there are many, became parties to the proceedings. Counsel further claim that the fact that a mortgage of chattels was not executed and recorded as required by statute is no defense to its foreclosure on the part of the mortgagee. Citing: Com. Trust Co. v. Salem Light, H. & P. Company, 77 N. H. 146, 148, 89 A. 452; Goudie v. American Moore Peg Company, 81 N. H. 88, 94, 122 A. 349.

In neither of the above-mentioned cases was the interest of a trustee in bankruptcy involved. In the instant case, the foreclosure of the void mortgages antedated the petition in bankruptcy by only seventeen days. Rights of innocent creditors having no knowledge of the defective mortgages are here involved.

■ Counsel for the Keene Oil Company invokes the principle that the Jaques mortgages having been foreclosed prior to the bankruptcy petition, that, even though within four months, the property is immune from attack by the trustee; that the property being in possession of the mortgagee, the defective execution of the mortgages is cured and therefore immaterial upon the doctrine announced by the New Hampshire Supreme Court in the case of Clark v. Tarbell, 57 N. H. 328, and Corning v. Records, 69 N. H. 390, 391, 46 A. 462, 76 Am. St. Rep. 178, Commonwealth Trust Co. v. Salem, etc., Company, 77 N. H. 146, 148, 89 A. 452, and Goudie v. American, etc., Company, 81 N. H. 88, 122 A. 349, and upon the authority of Massachusetts Trust Company v. MacPherson (C. C. A.) 1 F.(2d) 769, and Vincent v. Tafeen (C. C. A.) 40 F.(2d) 823.

It is claimed that defendant's lien relates back to the date of its mortgages, and that the trustee cannot recover possession of the property on the ground that the sale constituted a preference.

The answer to the defendant's argument is disclosed by the facts. The mortgages were never valid and were not sufficient to give the Keene Oil Company even a color of title. There was inherent invalidity. They were given at a time and under circumstances clearly indicating a purpose of covering up debtor's property in fraud of creditors and were permitted to remain on

the records of the town undischarged until shortly before the bankruptcy petition was filed. At the time the mortgages were given, Gilbert owed neither Jaques nor the Keene Oil Company. If, as claimed, they were given to Jaques to secure him for guaranteeing Gilbert's account with the Keene Oil Company, the situation has not changed. There is no evidence that Jaques ever became legally bound to the oil company or that he was called upon to pay any part of Gilbert's account. Never having been damnified, Jaques could not have foreclosed the mortgage on his own account because Gilbert never owed him anything on the mortgages from the day they were given to the day they were foreclosed. He could not create a debt by the act of assigning the mortgages to the Keene Oil Company. Gilbert's indebtedness to the Keene Oil Company had no relation to the two notes described in the mortgages. His account with the Keene Oil Company was a shifting account never the same in any two weeks in succession.

I hold that the foreclosure of the mortgages was invalid and gave the Keene Oil Company no title to the mortgaged property valid against the trustee in bankruptcy.

It is doubtful if the mortgages would have been valid if given directly to the oil company to secure a shifting account to be created in the future. In our experience we have known of no such mortgages having been given and counsel have failed to call any such to our attention.

■ In the absence of actual notice, Gilbert's creditors were not charged with notice of an existing lien by the fact that the mortgages were all recorded. In the case of Tisdale v. John H. Pray Sons Co., 73 N. H. 357, 62 A. 168, it is held that a mortgage of personalty, in which the affidavit required by statute is not signed and sworn to by both the mortgagee and mortgagor, is not entitled to registration; and the unauthorized records of such an instrument does not charge a subsequent attaching creditor with notice of the lien sought to be secured thereby. See, also, Janvrin v. Fogg, 49 N. H. 340; Parker v. Morrison, 46 N. H. 280; Kennard v. Gray, 58 N. H. 51; Phillips v. Johnson, 64 N. H. 393, 10 A. 819.

■ It appears that the Warne mortgage of May 31, 1933, was executed for the purpose of correcting errors in the mortgages dated April 29, 1932. Assuming that the mort-

gagee's title would thereby relate back to the two mortgages first executed, such assumption does not aid the mortgagee because the mortgage of May 31, 1933, is void because improperly executed. No possession of the mortgaged property was ever taken thereunder. Pub. Laws N. H. c. 216, § 16, provides: "No such mortgage shall be valid against any person except the mortgagor, his executors and administrators, unless possession is delivered or the mortgage is sworn to and recorded in the manner herein prescribed." The forms of affidavit, sections 8 and 9 of chapter 216, have already been quoted, supra. Kennard v. Gray, supra, and other cases cited.

The trustee is entitled to a decree against the defendants Keene Oil Company and John C. Warne for the possession of the two bulk oil tanks, pump, and house. As against the Keene Oil Company, he is entitled to a decree for $1,207.84, now or formerly in the hands of the deputy sheriff to be held by the trustee subject to the rights of Wesley N. Brush to be determined in the bankruptcy court.

The trustee is also entitled to recover against the Keene Oil Company the value of the tank oil truck as of August 17, 1933, the date of the filing of the petition in bankruptcy. The testimony with reference to its value is meager and unsatisfactory, but it appears that on July 31, 1933, the Keene Oil Company bid it off at the attempted auction sale for $870. In all probability, this sum included something for costs. The truck has been in use by the oil company since July 31, 1933, and is therefore materially depreciated in value so that its return to the trustee would not be fair to the estate. I find that on August 17, 1933, the truck was of the value of $800, for which sum the trustee is entitled to a decree against the Keene Oil Company.

It is entitled to a decree against John C. Warne invalidating his mortgages thereon.

The Keene Oil Company claims reimbursement for the amount of money which it has expended on the property since the foreclosure sale.

■ Its entire claim might be disallowed. See Milwaukee & Minn. R. Co. v. Soutter, 13 Wall. 517, 20 L. Ed. 543; Burt v. C. Gotzian & Co. (C. C. A.) 102 F. 937. But as an equitable consideration I am going to allow and do allow the Keene Oil Company the sum of $128.70 paid on account of taxes because otherwise the property taxed might

have been lost to the estate. This sum may be set off against the value of the truck.

A decree in accordance with the foregoing rulings may be presented to the court.